[No. 710-3.    Division Three.    February 4, 1974.]

MITCHI HECOMOVICH *et al., Respondents,* v. ST. MARTIN L.
NIELSEN *et al., Respondents,* GUARDIAN ESCROW
COMPANY *et al., Appellants.*

William R. Hickman and Stephen C. Ellis (of Reed, McClure, Moceri & Thonn, P.S.) and David D. Hoff and Thomas R. Dreiling (of Lind, Thom, Mussehl, Navoni, Hoff & Pierson), for appellants.

Grant J. Saulie and Thomas A. Gish, for respondents.

MUNSON, J.—Appellants, Guardian Escrow Company, Susan O. Manger and Scofield Company, appeal from a judgment in favor of respondents Nielsen and Hecomovich. By the terms of the judgment, the trial court granted forfeiture of a real estate contract in favor of the sellers Hecomovich and against the purchasers Nielsen, confirmed title to personalty in the Nielsens, and awarded damages to the Hecomoviches against appellants.

The parties will hereinafter be referred to by name only. The Hecomoviches, owners of a bulk oil distribution plant, desired to dispose of the business and listed it for sale with a realtor. Through the efforts of Ed Lochridge, a real estate agent for the Scofield Company, the Hecomoviches and the Nielsens executed an earnest money receipt and escrow agreement prepared by Mr. Lochridge. The Hecomoviches agreed to sell the entire business, consisting of real estate and personal property, to the Nielsens for $60,000, $15,000 as a downpayment and the balance to be paid on a 15-year contract, at an agreed rate of interest. The earnest money receipt, with a list of the personalty attached, and incorporated by reference, stated in part as follows:

4. CONVEYANCE: . . . (b) If this agreement is for sale on real estate contract, seller and purchaser agree to execute a Real Estate Contract for the balance of the purchase price on Real Estate Contract Form No.

A-1964, currently distributed by Title Insurance Companies. The terms of said form are herein incorporated by reference. Said contract shall provide that title be conveyed by Warranty Deed.

. . .

8. CLOSING: The sale shall be closed in the office of the Guardian Escrow Company on or before August 1, 1969. The purchaser and seller will deposit with said escrow all instruments and monies necessary to complete the purchase in accordance with this agreement, the cost of said escrow to be paid by purchaser and seller in equal shares. Escrow instructions are set forth on the reverse side of this instrument, and by their signatures below, all parties acknowledge and approve said instructions, agree to be bound thereby, and authorize closing in accordance therewith.

SEE ESCROW INSTRUCTIONS ON REVERSE SIDE

On the reverse side of the document the pertinent parts of the escrow instructions read as follows:

ESCROW INSTRUCTIONS BY SELLER:

. . .

We hand you herewith, or will submit prior to closing date, conveyance provided for herein, covering property described herein, together with standard form purchaser's policy of title insurance or report preliminary thereto, which you are authorized to deliver to purchaser or legal representative when you have for our account the purchase price or down payment provided for herein, plus purchaser's share of prorated obligations, including escrow fee.

. . .

ESCROW INSTRUCTIONS BY PURCHASER:

. . .

We hand you herewith, or will submit to you prior to closing date, the purchase price or down payment provided for herein, which you may disburse upon receiving and recording conveyance provided for herein covering property described herein, and receiving standard form purchaser's policy of title insurance or report preliminary thereto, complying fully with the within agreement.

Apparently Mr. Lochridge delivered a copy of the signed agreement to Susan O. Manger, manager of Guardian Es-

crow Company's Tacoma office. Mrs. Manger, who was not a lawyer, either prepared, or under her direction had prepared, a real estate contract, a bill of sale pertaining to the personalty, a real estate excise tax statement, and closing statements for the respective parties. The real estate contract, a copy of the preliminary title report, and the closing statement were forwarded to the Nielsens, together with a letter from Mrs. Manger, with the request that they sign the contract as their names appear therein and return that contract to the office of Guardian Escrow Company, together with their check for the amount stated in the letter. The Nielsens were then advised that upon closing they would be sent a copy of the recorded contract, a purchasers' title insurance policy, and the bill of sale covering the personal property.

A week later Mrs. Manger sent a similar letter to the Hecomoviches enclosing the real estate contract and bill of sale for their signature, together with a copy of the preliminary title-report and the closing statement. They were requested to sign the contract and the bill of sale with acknowledgment by a notary public and return the documents to her office. Upon closing, they were to be forwarded a copy of the recorded contract and a check of Guardian Escrow Company in the amount of $8,124.41.

Both parties were advised if they had any questions regarding the documents, they should either call Guardian Escrow Company or the Scofield Real Estate Company for explanation. There were no questions. The documents were executed by both parties and returned to Guardian Escrow. Delivery of the various documents and monies was then made by Guardian Escrow pursuant to the previous letters sent to the respective parties. From the monies paid, the Scofield Company received its real estate commission and the Guardian Escrow Company received an escrow fee.

Subsequently, the Nielsens fell behind in their payments under the real estate contract and the Hecomoviches gave notice of intent to declare forfeiture. It was then that the Hecomoviches learned that the bill of sale for the person-

alty had been delivered directly to the Nielsens and was in their possession. Based upon their possession of the bill of sale, the Nielsens declined to return the personalty, but agreed to quitclaim the realty back to the Hecomoviches.

Upon expiration of the notice of intent to declare forfeiture, and no action having been taken by the Nielsens, the Hecomoviches declared a forfeiture as to both the realty and the personalty. The Hecomoviches filed the instant suit against the Nielsens, seeking a reformation of the real estate contract to include the personalty and forfeiture of all properties. They sought damages against the Scofield Company, Guardian Escrow Company and Susan O. Manger for the negligent preparation of the real estate documents and against the Guardian Escrow Company for the unauthorized and negligent delivery of the bill of sale covering the personalty to the Nielsens.

At the conclusion of trial, the court denied reformation of the contract, forfeited the realty in favor of the Hecomoviches, confirmed title to the personalty to the Nielsens, and awarded damages to the Hecomoviches against the Scofield Company, Guardian Escrow Company, and Susan O. Manger, individually and jointly. The latter award was based upon findings of the unauthorized and negligent practice of law by Scofield, Guardian Escrow and Susan Manger, the unauthorized and negligent transfer of a bill of sale for personalty to the Nielsens and the negligent omission of the personalty from the real estate contract. Attorney's fees were awarded to respondents Hecomovich.

We shall discuss the assignments of error as they pertain to each of the appellants:

### SCOFIELD COMPANY

Scofield asserts the trial court erred in finding it liable for any wrongful or negligent acts of Guardian Escrow Company or Susan O. Manger and finding it liable for any alleged unauthorized practice of law. We agree.

The principal stockholders of Scofield Company were also the principal stockholders of Guardian. It was the cus-

tom of Scofield Company to refer its business to Guardian. They are, however, separate corporations.

■ Numerous findings of fact were entered wherein Scofield was found jointly liable with Guardian Escrow for negligently omitting the personal property from the real estate contract, negligently delivering the bill of sale to the Nielsens, negligently failing to provide a security interest in favor of plaintiffs as to the personal property, and for failing to adhere to the standards required of a lawyer. Even if we assume Guardian Escrow could be held liable upon the basis of these findings, we do not believe there is substantial evidence to support these findings as they pertain to Scofield.

The only instrument Scofield Company prepared, through its agent Mr. Lochridge, was the earnest money receipt and escrow agreement. There is no evidence that this document was either negligently or improperly prepared. That document properly included the personal property involved in the sale.

In order to hold Scofield liable for the alleged negligent preparation and/or delivery of documents prepared subsequent to the earnest money receipt, the Hecomoviches had the burden of proving active participation by Scofield, or its agent Lochridge, in those dealings, which participation was the proximate cause of the Hecomoviches' damage. This they failed to do. Susan Manger admitted that all documents other than the earnest money receipt were prepared by Guardian Escrow. She also admitted that Guardian sent the bill of sale to the Nielsens.

■ The only evidence which could be relied upon to support a finding of Scofield's liability through Lochridge is a statement allegedly made by Lochridge. The statement was testified to by Mr. Hecomovich as follows:

Q . . . What happened, so far as the formal execution of the contract was concerned? A Well, the real estate agent whom we mentioned brought in the contract. Q You can mention him by name. A Ed Lochridge brought the papers into the house and stated to us this

would all be taken care of. . . . [objection] A (Continuing) He said, "The papers will be taken care of" . . .

The objection taken to the above statement, as hearsay, should have been sustained, and the testimony stricken. Mr. Lochridge was deceased at the time of trial. The testimony must have been admitted for the truth of the matter asserted before any inference could be taken that the parties had an agreement with Scofield Company's agent that he would take care of the preparation of documents. The statement was hearsay and therefore inadmissible. *See State v. Murphy*, 7 Wn. App. 505, 500 P.2d 1276 (1972). Without this statement, we are left with the purchasers' belief that someone would take care of the preparation of the documents and that person is not designated. Consequently, findings wherein Scofield was held liable for negligent preparation and delivery of real estate documents, and negligent or wrongful practice of law, are not supported by the evidence.

Inasmuch as Scofield Company had contact only with bringing the buyer and seller together and with the execution of their earnest money receipt and escrow agreement, none of which contributes to plaintiffs' damages under the testimony here, the judgment against it must be reversed.

GUARDIAN ESCROW COMPANY AND SUSAN O. MANGER

Guardian Escrow Company and Susan Manger assign error to the court's confirming title to the personalty in the Nielsens. They contend the court should have held the delivery of the bill of sale by them to the Nielsens to have been erroneous and therefore ineffective to transfer title to the personalty.

■■ Unauthorized delivery of a document of title by an escrow company is of no effect; in a legal sense there has been no effective delivery. *Lechner v. Halling*, 35 Wn.2d 903, 216 P.2d 179 (1950); *Angell v. Ingram*, 35 Wn.2d 582, 213 P.2d 944, 15 A.L.R.2d 865 (1950). The trial court found that Guardian was grossly negligent in delivering the bill of sale to the personalty to the Nielsens, con-

trary to the escrow terms, and found such negligence to have proximately caused the Hecomoviches' damage. We do not discern from the escrow terms, quoted above, any instructions to Guardian, either to withhold or to deliver such a document. Hence, there is evidentiary support for the court's finding concerning delivery and therefore support for the contention that the delivery of a bill of sale to the Nielsens conveyed no title to them.

However, this event took place subsequent to the adoption of the Uniform Commercial Code. Under the provisions of the UCC, the delivery of the bill of sale had no legal effect. It is undisputed that the personal property itself was delivered to the Nielsens. That delivery conveyed title in the goods to the Nielsens. RCW 62A.2-401 reads in part as follows:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (RCW 62A.2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this Title. *Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.* Subject to these provisions and to the provisions of the Article on Secured Transactions (Article 9), *title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.*
>
> (2) *Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods,* despite any reservation of a security interest and *even though a document of title is to be delivered at a different time or place;* . . .

(Italics ours.) Here, the court properly found that the parties had not explicitly agreed as to the time of passage of title. Consequently, pursuant to the above statute, title to the personalty passed from the Hecomoviches to the Nielsens at the time the goods were physically turned over to the Nielsens. Based upon the trial court's findings and the UCC, title was properly reposed in the Nielsens.

Guardian and Mrs. Manger also contest the court's findings specifying negligent acts committed by them and the awarding of damages to the Hecomoviches in the amount of $10,404.50. The challenged findings may be summarized as follows: (1) Guardian and Manger were grossly negligent in delivering, and causing to be delivered, to the Nielsens the bill of sale to the personalty contrary to the escrow terms. (2) Guardian and Manger negligently omitted the personalty from the real estate contract and this negligence constituted the illegal practice of law by them. They failed to adhere to the standard of care expected of an attorney in drafting legal instruments, and this failure proximately caused the Hecomoviches to sustain damage. (3) Guardian and Manger were negligent in failing to provide the Hecomoviches a security interest in the personalty.

First, as to (1) above, title to the personalty passed to the Nielsens upon delivery of the personalty to them. Delivery of the bill of sale was therefore inconsequential, and cannot be said to have proximately caused damage to the Hecomoviches.

Findings (2) and (3) above are interrelated, both involving preparation of legal documents. The practice of law includes performing services in a court of justice, legal advice as counsel, and the preparation of legal instruments and contracts by which legal rights are secured. *Andersen v. Northwest Bonded Escrows, Inc.*, 4 Wn. App. 754, 484 P.2d 488 (1971). Likewise, the filling in of blanks in the printed form of legal documents has been held to constitute the practice of law. *In re Droker*, 59 Wn.2d 707, 370 P.2d 242 (1962); *State Bar Ass'n v. Washington Ass'n of Realtors*, 41 Wn.2d 697, 251 P.2d 619 (1952); *Yount v. Zarbell*, 17 Wn.2d 278, 135 P.2d 309 (1943). Thus, the preparation of real estate documents, including real estate contracts and security interests in personalty, constitutes the practice of law. More particularly, as here, where one determines for the parties the kinds of legal documents they should execute to effect their purpose, such is the practice of law. *People v. Sipper*, 61 Cal. App. 2d 844, 142 P.2d 960 (1943).

RCW 2.48.180 makes it a misdemeanor for anyone, not being an active member of the Washington State Bar Association, to practice law. Thus, the evidence supports the finding that Guardian and its employee, Mrs. Manger, engaged in the unauthorized practice of law when they took upon themselves the initial determination of which forms to prepare to effectuate the earnest money receipt and the filling in of blanks on printed legal forms.

In *Mattieligh v. Poe*, 57 Wn.2d 203, 204, 356 P.2d 328, 94 A.L.R.2d 464 (1960), the court stated: "When a broker undertakes to practice law, he is liable for negligence." There, the court held his product was at variance with his instructions. We discern no difference when an escrow company or its employees practice law, particularly when there are no instructions given.

Here, the Hecomoviches introduced no evidence to prove Guardian and Manger failed to adhere to the standard of care to which one lawfully practicing law in this state would be held in the selection and preparation of documents. Guardian and Manger allege this failure was prejudicial error. We disagree. Preferably, expert testimony should be produced to establish the standard of care contemplated in performing the legal function alleged to have been done negligently. *Kelly v. Carroll*, 36 Wn.2d 482, 219 P.2d 79, 19 A.L.R.2d 1174, *cert. denied*, 340 U.S. 892, 95 L. Ed. 646, 71 S. Ct. 208 (1950); *cf. State v. Maxfield*, 46 Wn.2d 822, 285 P.2d 887 (1955). However, the negligent failure to inquire of the parties concerning their intended disposition of the personalty was obvious to anyone with legal training. It was proper for the learned trial judge to take judicial notice of the standard of care. A lawyer does not expunge his legal training and experience upon ascending the bench. The sale of this business, and the legal requirements attendant thereto, were not so complex or extraordinary to require proof of the standard of care. The standard of care was so obviously breached in this case by the failure to make inquiry that the court could properly so conclude as a matter of law. *Burien Motors, Inc. v. Balch*, 9

Wn. App. 573, 580, 513 P.2d 582 (1973). The award of damages to the Hecomoviches is therefore affirmed.

■ However, the amount of the award of damages to the Hecomoviches for the value of security lost was improperly computed. The Hecomoviches did, in reality, lose the value of the security interest in the property they might have retained pursuant to article 9 of the Uniform Commercial Code, RCW 62A.9. The court based the amount of $10,404.50 upon the value of the property lost. This was incorrect. The measure of damages in such an instance is the value of the loss of the security interest, not the value of the personal property. *Ferrell v. Cronrath*, 67 Wn.2d 642, 409 P.2d 472 (1965); *Andersen v. Northwest Bonded Escrows, Inc., supra.*

■ In addition to the damage award, the trial court awarded the Hecomoviches attorney's fees in the amount of $1,500. The general rule with respect to awarding attorney's fees is:

> [I]n the absence of contract, statute or recognized ground of equity, a court has no power to award an attorney's fee as a part of the costs of litigation. *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 111 P.2d 612 (1941). However, a narrow exception to this rule has been established in this state. The Supreme Court has held that when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorney's fees. *Wells v. Aetna Ins. Co.*, 60 Wn.2d 880, 376 P.2d 644 (1962). The original suit generating the expenses must be instituted by a third party not connected with the initial wrongful act.

*Vincent v. Parkland Light & Power Co.*, 5 Wn. App. 684, 686, 491 P.2d 692 (1971). This action does not support an award of attorney's fees either contractually or statutorily. Likewise, we find nothing to indicate the plaintiff was in litigation with anyone other than those who had been involved in the original transaction. Therefore, there is no

support for applying the exception to the rule. Hence, the award of attorney's fees in this litigation was improper.

Counsel for Mrs. Manger also contends that even though Guardian may be held liable, she should not be held individually liable. We disagree; her individual actions subject to her to the same results as her employer.

Therefore, the judgment against Scofield is reversed and the Hecomoviches' claim against it is dismissed. The judgment is affirmed insofar as title to the personal property is confirmed in the Nielsens. Judgment in favor of the Hecomoviches, forfeiting the real estate in their favor, is likewise affirmed. The award of attorney's fees to the Hecomoviches is reversed. The judgment for money damages against Guardian Escrow Company and Susan O. Manger is reversed and remanded for reconsideration as to the value of the security interest lost. Each party shall bear its own costs on appeal.

GREEN, C.J., and BARNETT, J. Pro Tem., concur.

Petition for rehearing denied March 7, 1974.

Review denied by Supreme Court April 30, 1974.