[No. 15560-5-II. Division Two. July 28, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. JERRY NATHAN HUNT, *Appellant.*

*David G. Skeen,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky* and *Karin L. Nyrop, Deputies,* for respondent.

*Robert D. Welden* on behalf of Washington State Bar Association, amicus curiae.

SEINFELD, J. — Jerry Nathan Hunt appeals his convictions of 12 counts of unlawful practice of law, three counts of unlicensed operation as a collection agency, and one count of theft in the second degree. We affirm.

### FACTS

Hunt called himself a paralegal and operated a business called Strategic Services. He had no formal or academic

paralegal training but had learned something about the law while working with an attorney in Spokane for approximately 2 years.

The 12 unlawful practice of law counts fall into the following categories. In eight of the counts, Hunt represented people injured in car accidents who had negligence claims against insured drivers. Hunt drafted and had each client sign a limited power of attorney authorizing Hunt to settle the liability claim with the insurer and to collect the settlement amount. He then negotiated with the insurer's adjuster, telling the adjuster he was a "negotiator" or "mediation counsel" retained by the injured party.

Pursuant to these negotiations, Hunt prepared settlement liens in favor of car rental agencies, medical providers, and drug stores. In one case, he mailed a request for discovery and a request for admissions, although he had not yet filed suit. Hunt sometimes threatened that his client would file suit. He represented to the adjusters that he had researched appropriate amounts for the injuries and made settlement demands. He collected settlement checks and had his clients sign releases. He also signed documents for his clients.

In two cases, Hunt helped prepare and file dissolution forms. The forms indicated the client was proceeding pro se. In one of these cases, Hunt interceded as a "friend of the court" during a hearing at which a superior court judge entered the decree. He later billed the client for this intervention. In another case, Hunt drafted pleadings in response to a motion to modify support. Finally, in one case, Hunt's clients asked him to research some Washington statutes and respond to a letter from the attorney for a well-drilling company with whom they had a dispute. Hunt wrote a letter, based in part on the clients' summary of the facts.

The three unlicensed collection counts were based on debts Hunt either collected or tried to collect for three businesses. In two of the counts, Hunt had the business owner assign him the debt; he then filed a pro se lawsuit seeking payment. In some of the pleadings, however, he listed the original creditor as a plaintiff. In another case, he hounded a

drugstore customer about covering a bad check; the drugstore apparently did not assign the debt to Hunt. The clients testified to hiring Hunt to collect their debts; they did not view the transaction as a sale of the debt. In one of the "assignment" cases, Hunt continued to bill his client for various court costs.

The theft count was based on Hunt's representation of two of his personal injury clients, Joe Scott and Pierrette Guimond. As with his other clients, Hunt prepared and had the two sign limited powers of attorney. After settling the cases, he cashed the two settlement checks and had the bank issue seven cashier's checks. One went to each client, several went to doctors, and one went to Hunt's landlord to pay his rent of $445. The remainder, $683.50, was disbursed to Hunt in cash. The total award was $10,200.

The clients became concerned that the amounts of the checks were incorrect, and, after contacting the insurance company to learn the amount of the settlement, requested an accounting, which Hunt did not initially provide. Eventually, he provided an inaccurate accounting. In addition, he told the clients that he believed they had agreed that he would get 7 percent of the settlement for each client, not simply 7 percent of the settlement. He did not list the rent check on the accounting, but did charge the two clients for the $5 fee to issue that check.

Eventually, Hunt agreed to remit an additional $400 to his clients, but he did not do so until the State filed unlawful practice of law charges. The State filed the theft charges some months after Hunt paid the additional $400, even though the clients, by that time, had signed a release indicating they had received full satisfaction from Hunt.

At trial, the prosecution presented evidence that Hunt had poorly represented some of his clients, did not always act in his clients' best interests, and acted unethically or incompetently. Among other things, the state witnesses indicated Hunt did not keep his clients informed of his activities, did not inform clients of the full amount of settlements, reached settlements without consulting with his clients, settled claims

of minors without proper safeguards, fought with one of his clients in front of an insurance adjuster, and filed incomplete or improper documents in court. Three lawyers testified: two substantive witnesses who described Hunt's actions representing clients, and Robert Welden, the general counsel to the Washington State Bar Association. Over Hunt's objection, all three lawyers testified as experts as to the definition of the "practice of law".

Hunt testified that he did not represent to anyone that he was a lawyer or could act as one. He also told his clients he could not go to court for them. The defense elicited from several of Hunt's clients that they knew Hunt was acting as a paralegal and not as an attorney.

The jury convicted Hunt on all counts. On appeal, Hunt claims that the law prohibiting unlawful practice of law is unconstitutionally vague, that the evidence was insufficient to convict on the theft and collection agency counts, and that the jury instructions related to the unlawful practice of law charges were erroneous.

## Unconstitutional Vagueness

The unlawful practice of law, a misdemeanor, is defined in RCW 2.48.180. The statute provides, in relevant part:

> Any person who, not being an active member of the state bar, . . . as by this chapter provided, shall practice law, or hold himself out as entitled to practice law, shall, except as provided in RCW 19.154.100, be guilty of a misdemeanor[.]

RCW 2.48.180.

Hunt argues that the statutory phrase "practice law" is unconstitutionally vague under the due process clauses of the Fifth and Fourteenth Amendments and under the Washington State Constitution, article 1, section 3. He does not contend, however, that the Washington Constitution provides different or broader protection than the federal constitution.

We note initially that the federal courts have refused to find similar statutes impermissibly vague under the federal constitution. In 1967, the United States Supreme Court dismissed an appeal of an Arizona decision for want of a substantial federal question; the petitioner had challenged a similar

Arizona statute as unconstitutionally vague. *Hackin v. State*, 102 Ariz. 218, 220, 427 P.2d 910, 912, *appeal dismissed*, 389 U.S. 143, 19 L. Ed. 2d 347, 88 S. Ct. 325 (1967). Since then, other federal courts have followed this binding precedent. *Wright v. Lane Cy. Dist. Court*, 647 F.2d 940, 941 (9th Cir. 1981); *Monroe v. Horwitch*, 820 F. Supp. 682, 686 (D. Conn. 1993), *aff'd*, 19 F.3d 9 (2d Cir. 1994).

■■ As we explained in *State v. Russell*, 69 Wn. App. 237, 245, 848 P.2d 743, *review denied*, 122 Wn.2d 1003 (1993), when a criminal statute does not define words alleged to be unconstitutionally vague, the reviewing court may "look to existing law, ordinary usage, and the general purpose of the statute" to determine whether "the statute meets constitutional requirements of clarity". We must presume that a statute is constitutional; the burden is on the challenger to prove otherwise beyond a reasonable doubt. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992).

■ Unless the challenger claims a violation of First Amendment rights, we evaluate the statute by looking to the facts of the particular case. *Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). The challenged law

> is tested for unconstitutional vagueness by inspecting the actual conduct of the party who challenges the ordinance and not by examining hypothetical situations at the periphery of the ordinance's scope.

*Douglass*, 115 Wn.2d at 182-83. Hunt does not claim implication of his First Amendment rights. Thus, we evaluate the statute as applied to Hunt's alleged conduct. *See Russell*, 69 Wn. App. at 245.

■ A statute violates Fourteenth Amendment due process protections if it fails to provide a fair warning of proscribed conduct. *Douglass*, 115 Wn.2d at 178. Although some uncertainty is constitutionally permissible, a statute is unconstitutionally vague if:

> (1) . . . [it] does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . [it] does not provide ascertainable standards of guilt to protect against arbitrary enforcement.

*Douglass*, 115 Wn.2d at 178-79.

■ As Hunt concedes, several Washington cases provide a definition for "practice of law". According to those cases, a person preparing legal forms is practicing law. *In re Droker*, 59 Wn.2d 707, 719, 370 P.2d 242 (1962); *accord Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 586, 675 P.2d 193 (1983). The *Droker* court held

> the term "practice of law" includes not only the doing or performing of services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure, but in a larger sense includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured.

59 Wn.2d at 719; *accord Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 446-47, 635 P.2d 730 (1981); *Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 54, 586 P.2d 870 (1978) (hereinafter *WSBA*); *Hecomovich v. Nielsen*, 10 Wn. App. 563, 571, 518 P.2d 1081, *review denied*, 83 Wn.2d 1012 (1974).

The Supreme Court expanded on this notion in *WSBA*:

> the selection and completion of form legal documents, or the drafting of such documents, including deeds, mortgages, deeds of trust, promissory notes and agreements modifying these documents constitutes the practice of law.

*WSBA*, 91 Wn.2d at 55; *accord Bowers*, 100 Wn.2d at 586; *Hagan & Van Camp*, 96 Wn.2d at 447. Also, when "one determines for the parties the kinds of legal documents they should execute to effect their purpose, such is the practice of law." *Hecomovich*, 10 Wn. App. at 571; *WSBA*, 91 Wn.2d at 58, 60. Services which are ordinarily performed by licensed lawyers and that involve legal rights and obligations were held to be the practice of law in *WSBA*. 91 Wn.2d at 55. "It is the nature and character of the service performed which governs whether given activities constitute the practice of law", not the nature or status of the person performing the services. *WSBA*, 91 Wn.2d at 54; *accord Hagan & Van Camp*, 96 Wn.2d at 448. If the activities in question are the practice of law, then the question is whether the person practicing law is authorized to do so. *WSBA*, at 54.

■ The unauthorized practice of law is prohibited to protect the public. *See, e.g., Bowers,* 100 Wn.2d at 586; *Monroe,* 820 F. Supp. at 687; *Dauphin Cy. Bar Ass'n v. Mazzacaro,* 465 Pa. 545, 551-52, 351 A.2d 229, 232-33 (1976); *Brown v. Unauthorized Practice of Law Comm.,* 742 S.W.2d 34, 41-42 (Tex. Ct. App. 1987). As the Washington Supreme Court has stated, "there is no such thing as a simple legal instrument in the hands of a layman." *Hagan & Van Camp,* 96 Wn.2d at 447 (quoting *Washington State Bar Ass'n v. Washington Ass'n of Realtors,* 41 Wn.2d 697, 712, 251 P.2d 619 (1952) (Donworth, J., concurring)).

> When a person holds himself out to the public as competent to exercise legal judgment, he implicitly represents that he has the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity. When such representations are made by persons not adequately trained or regulated, the dangers to the public are manifest . . ..

*Mazzacaro,* 465 Pa. at 551. As the *Mazzacaro* court noted, a client may entrust confidences, reputation, property, or freedom when he or she entrusts a legal matter to a person practicing law. 465 Pa. at 551. The person receiving that trust should be subject to the regulations imposed on lawyers.

■ Although in certain situations it may be difficult to precisely define the term, "practice of law", *Hagan & Van Camp,* 96 Wn.2d at 446; *WSBA,* 91 Wn.2d at 54, the general definition is sufficient to allow an ordinary person to know that RCW 2.48.180 proscribes Hunt's conduct. Hunt attempted to settle claims based on negligence liability for clients. When he succeeded, his clients signed forms releasing both the tortfeasor and the insurance company from liability. Insurance companies often issued checks payable to Hunt or to his clients. When representing his clients, Hunt performed legal research and applied the results to the facts of his clients' claims, basing his demands on this application of precedent to facts, and on his analysis of the liability of the insured. When pursuing his clients' tort claims, Hunt documented past and future expenses, prepared affidavits,

and mailed discovery demands. He also prepared liens for those providing services to his clients. This conduct is clearly proscribed by RCW 2.48.180; Hunt could not reasonably be surprised by the application of the statute to these activities. *See also Mazzacaro*, 465 Pa. at 554-55; *Brown*, 742 S.W.2d at 41-43.

Hunt also performed legal research and drafted, signed, and sent a letter containing several legal assertions or conclusions in response to an attorney's letter to his client. He drafted pleadings and memoranda in response to a motion to modify support; the client filed them, purportedly acting pro se. These actions are also clearly proscribed by the statute.

Hunt also prepared dissolution documents, actually interceding for one dissolution client during a court hearing. Washington law clearly prohibits an unlicensed person from selecting and completing legal forms for another, necessarily including dissolution forms. *See also Monroe*, 820 F. Supp. at 686-87 (citing to several other courts that have reached the same conclusion). As to the first prong of the vagueness test, an ordinary person would understand that Hunt's actions constituted the practice of law.

■ Under the due process clause, the statute and the challenged phrase must also provide ascertainable standards of guilt to prevent arbitrary enforcement. A lack of standards allows police, judge, and jury to decide subjectively what conduct violates the law in a given case. *Douglass*, 115 Wn.2d at 181. However, a statute may require some subjective evaluation by law enforcers; it violates the Fourteenth Amendment "only if it invites an inordinate amount" of discretion. 115 Wn.2d at 181. Even if we assume that the challenged phrase, "practice law", might in some circumstances allow subjective enforcement, as applied here the law is sufficiently defined to prevent inordinately arbitrary enforcement.

■ Hunt seems to argue that because he claimed to be a paralegal, RCW 2.48.180 is unconstitutionally vague as applied to him. We disagree. A paralegal is "[a] person with legal skills, but who is not an attorney, and who works under the supervision of a lawyer in performing various

tasks relating to the practice of law or who is otherwise authorized by law to use those legal skills." Black's Law Dictionary 1111 (6th ed. 1990). Hunt did not work under the supervision of any attorney. His claimed paralegal status does not exempt him from RCW 2.48.180 or make the statute any less sufficiently definite as applied to his clearly proscribed conduct. *See also Monroe*, 820 F. Supp. at 684, 686-87; *State v. Thierstein*, 220 Neb. 766, 769-70, 371 N.W.2d 746, 748 (1985).

Hunt also appears to argue that the existence of statutes allowing the use of powers of attorney makes the phrase "practice of law" unconstitutionally vague as applied to his actions. He contends that since he essentially became his clients by virtue of the powers of attorney, he could then act pro se for himself/them. A person may represent himself or herself pro se. A person can also draft legal documents to which he or she is a party. Both these exceptions are narrow and limited. *WSBA*, 91 Wn.2d at 56-57.

The exceptions do not apply to Hunt's conduct because (1) "a layperson who receives compensation for such legal services may not rely upon the 'pro se' exception"[1] and (2) Hunt was not performing services solely on his own behalf.[2] The Supreme Court of Alaska has decided that a statutory power of attorney does not authorize the agent to act pro se in the place of the principal. *Christiansen v. Melinda*, 857 P.2d 345 (Alaska 1993). Furthermore, to the extent that Washington's statutes allowing use of powers of attorney would allow the unlicensed practice of law, they are unconstitutional. *See Hagan & Van Camp*, 96 Wn.2d at 451-53. If the Legislature purported to allow laypersons to practice law, it impermissibly usurped the power of the courts and violated the separation of powers doctrine. 96 Wn.2d at 451-53.

### INSUFFICIENCY OF THE EVIDENCE

Hunt contends the State presented insufficient evidence to support the guilty verdicts; he provides argument

---

[1]*WSBA*, 91 Wn.2d at 57.

[2]*See Hagan & Van Camp*, 96 Wn.2d at 451.

only as to the theft and collection agency counts. Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Seattle v. Slack*, 113 Wn.2d 850, 859, 784 P.2d 494 (1989).

Hunt does not assign error to the instructions governing the theft charge. Unchallenged instructions are the law of the case. *State v. Ng*, 110 Wn.2d 32, 39, 750 P.2d 632 (1988). The instructions provide that the State need not prove a permanent intent to deprive the victims of their money. They also provide that the State must prove Hunt "did not appropriate" the money "openly and avowedly under a good faith claim of title". Hunt's insufficiency argument is based on his "good faith" defense.

When Hunt cashed the settlement checks, he disbursed the funds via several cashier's checks, including one to his landlord, and he took the remainder in cash. He initially provided no accounting and did not tell his clients how much the insurance company had paid. To this extent, his "appropriation" was not "open". When his clients confronted him with what they believed were discrepancies, he was flustered and belligerent and threatened to sue them for additional fees. He eventually provided an inaccurate accounting and claimed he was entitled to 14 percent of the total settlement. He never informed his clients of the cashier's check issued to pay his rent, although he charged them the fee for issuing it. He finally agreed that he might have calculated his fees incorrectly and agreed to repay $400; eventually, he actually paid this amount. These facts are sufficient to prove an intent to wrongfully deprive, even if the deprivation was not permanent.

Hunt's argument as to the collection agency counts is that he was simply collecting debts assigned to him. However, the evidence is otherwise. Witnesses testified that Hunt was acting as their agent to collect debts; some of Hunt's pleadings designated the original creditor as plaintiff and Hunt obtained various filing fees from the original creditors. All

these acts are inconsistent with one who has purchased a debt. This evidence is sufficient to support the conviction.

## INSTRUCTIONS

Hunt finally claims that the trial court erred when it issued instructions 13 through 16 defining the practice of law and instructions 20 through 31 using the term "representation" to describe Hunt's relationship to his clients. Instruction 13[3] simply restates RCW 2.48.180. Instruction 14[4] accurately defines the practice of law as defined by the Washingson cases we discussed above. Instruction 15 explains that a person may practice law on his own behalf but "cannot transfer his 'pro se' right to practice law to any other person". As we earlier explained, this is also an accurate statement of Washington law. Instruction 16 describes powers of attorney and states: "A power of attorney does not authorize the practice of law." As noted above, this too is an accurate statement of Washington law.

The use of the term "representation" in the "to convict" instructions (i.e., "[t]he defendant practiced law through his representation of Thomas and Beverly Lee") does not appear to unfairly suggest guilt, as argued to the trial court. As the trial court noted, the term is not used solely in regard to lawyers. Factually, it is correct: Hunt had clients; he represented them. The trial court did not err in instructing the jury as it did.

---

[3]Instruction 13 states: "A person commits the crime of unlawful practice of law when, not being an active member of the State Bar, he practices law or holds himself out as entitled to practice law."

[4]Instruction 14 states:

"The practice of law means:

"(1) Doing or performing services in the courts of justice, and/or;

"(2) Giving legal advice and counsel, and/or;

"(3) The preparation of legal instructions and contracts by which legal rights and obligations are established, including the completion of pre-printed legal document forms.

"The completion of pre-printed legal forms, preparation of legal instruments and the giving of legal advice and counsel are the practice of law irrespective of whether they are used in an action or proceeding pending in a court.

"Items (1), (2), and (3) are alternatives and only one need be proven."

808

Affirm.

MORGAN, C.J., and HOUGHTON, J., concur.

Review denied at 125 Wn.2d 1009 (1994).