[Nos. 45837-0-I; 45885-0-I; Division One. August 13, 2001.]
45886-8-I; 46085-4-I.

MARIA TEGMAN, ET AL., *Respondents*, v. ACCIDENT & MEDICAL INVESTIGATIONS, INC., ET AL., *Defendants*, DELORIS M. MULLEN, ET AL., *Appellants*.

870

*Floyd F. Fulle* and *Lorinda S. Noble*, for appellants.

*Gregory D. Lucas* and *Mona Smith* (of *Lucas & Lucas, P.S.*), for respondents.

BECKER, J. — When a paralegal performs legal services with knowledge that there is no supervising attorney responsible for the case, the paralegal will be held to an attorney's standard of care. Attorneys have a duty to keep

their clients informed about material developments in their cases. The trial court found that Deloris Mullen, a paralegal, and Lorinda Noble, an attorney, while employed by a nonlawyer who represented accident victims, breached this duty and caused harm to the plaintiffs when they failed to advise them of the risk involved with allowing a nonlawyer to settle their cases. We affirm the judgments.

The trial court's findings of fact present the following account of the events surrounding this dispute. Between 1989 and 1991, plaintiffs Maria Tegman, Linda Leszynski, and Daina Calixto were each injured in separate and unrelated automobile accidents. After their accidents, each plaintiff retained G. Richard McClellan and Accident & Medical Investigations, Inc. (AMI), for legal counsel and assistance in handling their personal injury claims. McClellan and AMI purported to represent each plaintiff in seeking compensation from insurance companies for their injuries. Each plaintiff signed a contingency fee agreement with AMI, believing that McClellan was an attorney and AMI a law firm. McClellan has never been an attorney in any jurisdiction.

McClellan and AMI employed Camille Jescavage and Lorinda Noble, both licensed attorneys. Jescavage and Noble learned that McClellan entered into contingency fee agreements with AMI's clients and that McClellan was not an attorney. They settled a number of cases for AMI, and learned that McClellan processed settlements of AMI cases through his own bank account. Noble resigned from AMI in May 1991, after working there approximately six months.

In July 1991, McClellan hired Deloris Mullen as a paralegal. Mullen considered Jescavage to be her supervising attorney though Jescavage provided little supervision. Jescavage resigned from AMI in the first week of September 1991. McClellan told Mullen that her new supervising attorney would be James Bailey. Mullen did not immediately contact Bailey to confirm that he was her supervising attorney. He later told her he was not.

While at AMI, Mullen worked on approximately 50-60

cases, including those of plaintiffs Tegman, Leszynski and Calixto. Mullen was aware of some of McClellan's questionable practices and knew that there were substantial improprieties involved with his operation. Mullen stopped working at AMI on December 6, 1991, when the situation became personally intolerable to her and she obtained direct knowledge that she was without a supervising attorney. When she left, she did not advise any of the plaintiffs about the problems at AMI.

After Mullen left, McClellan settled each plaintiff's case for various amounts without their knowledge or consent, and deposited the funds in his general account by forging their names on the settlement checks.

In 1993, Calixto, Leszynski, and Tegman each individually sued McClellan, AMI, Mullen, and Jescavage. Tegman also sued Noble. Their complaints sought damages on various theories. The cases were consolidated. Discovery took place between 1993 and 1998. In the interim, McClellan pleaded guilty to mail fraud in United States District Court in 1997 and was sentenced to two years imprisonment. Also, this court affirmed a judgment by the same trial court in another case where McClellan settled a client's case without authorization and stole the proceeds. *Bullard v. Bailey*, 91 Wn. App. 750, 959 P.2d 1122 (1998). That judgment apportioned 20 percent fault to attorney James Bailey who, like Noble and Jescavage, had associated himself with AMI and failed to warn his clients of McClellan's improprieties.

In the present matter, the court entered summary judgment against McClellan and AMI on the issue of liability. After a six-day trial, the court held Mullen, Noble, and Jescavage liable for negligence and legal negligence, and awarded damages. Only Mullen and Noble appeal. Their appeals have been consolidated.

## STANDARD OF REVIEW

■ An appellate brief must include argument in support of issues presented for review, together with citations to

legal authority. *See* RAP 10.3(a)(5). Assignments of error not argued in a brief are deemed abandoned. *Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 630, 733 P.2d 182 (1987); *Pappas v. Hershberger*, 85 Wn.2d 152, 153, 530 P.2d 642 (1975). Accordingly, we review only those assignments of error that are supported by argument in appellants' briefs.

■ Our review of a trial court's findings of fact and conclusions of law is a two-step process. We first determine whether the trial court's findings of fact were supported by substantial evidence in the record. *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). Substantial evidence is evidence which, viewed in the light most favorable to the party prevailing below, would persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). If the findings are adequately supported, we next decide whether those findings of fact support the trial court's conclusions of law. *Landmark Dev.*, 138 Wn.2d at 573.

## PARALEGAL NEGLIGENCE

■ Mullen, a paralegal, contends the court erred in finding her negligent. To establish the elements of an action for negligence, a plaintiff must show: (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996).

■ Nonattorneys who attempt to practice law will be held to the same standards of competence demanded of attorneys and will be liable for negligence if these standards are not met. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 586-89, 675 P.2d 193 (1983); *Hogan v. Monroe*, 38 Wn. App. 60, 65, 684 P.2d 757 (1984) (realtor who drafted addendum that substantially altered the rights of property buyers held to the standard of care of a reasonably prudent attorney).

In *Bowers*, sellers sold property to buyers who had persuaded a nonattorney escrow agent to prepare an unsecured promissory note in favor of the sellers. After the deed was delivered to the buyers, the sellers learned the significance of the fact that the note was unsecured. They discovered that the buyers had departed for places unknown after using the property as security for a substantial loan. The sellers sued the escrow agent and obtained summary judgment on liability for negligence. Our Supreme Court affirmed, holding the escrow agent to an attorney's standard of care. The escrow agent breached a duty to inform the sellers of the advisability of obtaining independent counsel. *Bowers*, 100 Wn.2d at 590. That duty was owed because the escrow agent, by preparing the closing documents, was engaging in the practice of law.

█ The "practice of law" clearly does not just mean appearing in court. In a larger sense, it includes "legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured." *In re Disciplinary Proceeding Against Droker & Mulholland*, 59 Wn.2d 707, 719, 370 P.2d 242 (1962). *See also Bowers*, 100 Wn.2d at 586; *Wash. State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 54, 586 P.2d 870 (1978); *State v. Hunt*, 75 Wn. App. 795, 801-02, 880 P.2d 96 (1994).

█ Mullen contends that her status as a paralegal precludes a finding that she was engaged in the practice of law. She argues that a paralegal is, by definition, someone who works under the supervision of an attorney, and that it is necessarily the attorney, not the paralegal, who is practicing law and owes a duty to the clients. Her argument assumes that she had a supervising attorney. The trial court's determination that Mullen was negligent was dependent on the court's finding that Mullen knew, or should have known, that she did not have a supervising attorney over a period of several months while she was at AMI. "Had Mullen been properly supervised by an attorney at all times during her employment with AMI, plaintiffs presumably

would have no case against her. Rather, her supervising attorney would be responsible for any alleged wrongdoing on her part."[1]

We agree with the trial court's observation. The label "paralegal" is not in itself a shield from liability. A factual evaluation is necessary to distinguish a paralegal who is working under an attorney's supervision from one who is actually practicing law. A finding that a paralegal is practicing law will not be supported merely by evidence of infrequent contact with the supervising attorney. As long as the paralegal does in fact have a supervising attorney who is responsible for the case, any deficiency in the quality of the supervision or in the quality of the paralegal's work goes to the attorney's negligence, not the paralegal's. In this case, Mullen testified that she believed James Bailey was her supervising attorney after Jescavage left. The court found Mullen was not justified in that belief. Mullen assigns error to this finding, but the evidence supports it. Mullen testified that she had started to distrust McClellan before he informed her that Bailey would be her supervising attorney. Mullen also testified that she did not contact Bailey to confirm that he was supervising her. Bailey testified at a deposition that he did not share Mullen's clients and she did not consult him regarding any of her ongoing cases. He also said that one of the only conversations he remembers having with Mullen with respect to AMI is one where he told her that he was not her supervising attorney after she raised the issue with him. This testimony amply supports the trial court's finding that Mullen was unjustified in her belief that Bailey was her supervising attorney.

In *Hunt*, a paralegal appealed a criminal conviction for the unauthorized practice of law based on his conduct in running a claim settlement company. Among other things, Hunt failed to inform his clients of his activities, did not inform clients of the full amount of settlements, reached

---

[1] Court's Mem. Decision Following Trial, at 24.

settlements without consulting his clients, and filed incomplete or improper documents in court. In a constitutional challenge to the unauthorized practice of law statute, RCW 2.48.180, Hunt argued that his status as a paralegal prevented a finding that he was engaged in the practice of law. The Court of Appeals disagreed and affirmed his conviction: " 'It is the nature and character of the service performed which governs whether given activities constitute the practice of law,' not the nature or status of the person performing the services." *Hunt*, 75 Wn. App. at 802. (quoting *Wash. State Bar Ass'n*, 91 Wn.2d at 54). As in *Hunt*, Mullen's status as a paralegal did not preclude the trial court from concluding that Mullen had engaged in the practice of law.

■ Contrary to Mullen's argument, such a conclusion does not require evidence that the paralegal called herself an attorney, entered appearances, or charged fees. Mullen testified that she negotiated settlements on behalf of the plaintiffs. She sent a letter rejecting, without Tegman's knowledge, a settlement offer made to Tegman. She continued to send out demand and representation letters after Jescavage left AMI. Letters written by Mullen before Jescavage's departure identify Mullen as a paralegal after her signature, whereas letters she wrote after Jescavage's departure lacked such identification. Even after Mullen discovered, in late November 1991, that Bailey was not her supervising attorney, she wrote letters identifying "this office" as representing the plaintiffs, neglecting to mention that she was a paralegal and that no attorney was responsible for the case. This evidence substantially supports the finding that Mullen engaged in the practice of law.

■ Mullen contends that she cannot be held liable for negligence because the statute that prohibits the unauthorized practice of law was not in effect at the time she worked for AMI. The trial court dismissed the plaintiffs' claims that were based on the alleged statutory violation, but this does not prevent Mullen from being liable on the negligence claim. Under *Bowers*, the duty arises from the

practice of law, not from the statute.

Mullen points out that an attorney-client relationship is an element of a cause of action for legal malpractice. *Daugert v. Pappas*, 104 Wn.2d 254, 704 P.2d 600 (1985). The trial court did not find that she had an attorney-client relationship with any of the plaintiffs, and she contends that as a result it is illogical to hold her to the standard of care of an attorney.

Mullen, because she is not an attorney, could not have attorney-client relationships. Nevertheless, as *Bowers* demonstrates, a layperson can logically be held to the standard of care of an attorney in a negligence action. The duty arises from the attempt to engage in the practice of law rather than from the professional status of the defendant. The trial court, covering all bases, held Mullen liable both for negligence and legal negligence. While the "legal negligence" label may have been incorrect, any such error is immaterial because the negligence theory produces the same result and, as the trial court observed, for practical purposes the allegations are the same.

Accordingly, we conclude the trial court did not err in following *Bowers* and holding Mullen to the duty of an attorney. The duty of care owed by an attorney is that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in Washington. *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992).

Mullen challenges, as unsupported by the evidence, the trial court's key finding as to the duties that Mullen owed and breached. The court found that the standard of care owed by an attorney, and therefore also by Mullen, required her to notify the plaintiffs of:

> (1) the serious problems concerning the accessibility of their files to persons who had no right to see them, (2) the fact that client settlements were not processed through an attorney's trust account, but rather McClellan's own account, (3) the fact that McClellan and AMI, as non-lawyers, had no right to enter

into contingent fee agreements with clients and receive contingent fees, (4) the fact that McClellan was, in fact, engaged in the unlawful practice of law, and that, generally, (5) the clients of McClellan and AMI were at substantial risk of financial harm as a result of their association with AMI. Mullen breached her duty to her clients in all of these particulars.[2]

The finding rests on the testimony of attorney Charles Nelson Berry III, an expert witness for the plaintiffs. The trial court found Berry's testimony to be "thoughtful and well-considered" and, significantly, unrebutted.

 Mullen argues that the finding must be stricken because Berry improperly derived the standard of care from the Rules of Professional Conduct. In testifying that an attorney's conduct violated the legal standard of care, an expert witness may base an opinion on an attorney's failure to conform to an ethics rule, and may testify using language found in the Rules of Professional Conduct, as long as the jury is not led to believe that the ethical violations were actionable. *Hizey*, 119 Wn.2d at 265. Berry's testimony, phrased in terms of breach of the standard of care, stayed within this constraint. We conclude the finding is supported by substantial evidence. Accordingly, the trial court did not err in concluding that Mullen was negligent.

 The trial court's findings on damages, unchallenged by Mullen on appeal, are verities. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Mullen does, however, challenge the trial court's findings on proximate cause. Like the defendant attorney in *Bullard v. Bailey*, 91 Wn. App. 750, 959 P.2d 1122 (1998), she essentially contends this element is unsupported because McClellan's improper settlement of the cases would have caused the plaintiffs' damages regardless of her failure to warn them. She emphasizes that by the time she left AMI, the plaintiffs had already signed invalid contingency fee agreements with McClellan and that he was well on his way to converting their funds.

---

[2] Finding of Fact 101. This same finding was made under number 80 in the Leszynski and Calixto cases.

Proximate cause consists of two elements: cause in fact and legal causation. *Bullard*, 91 Wn. App. at 755. Cause in fact is the "but for" consequence of the injury. *Bullard*, 91 Wn. App. at 755 (citing *City of Seattle v. Blume*, 134 Wn.2d 243, 251, 947 P.2d 223 (1997)). It is a matter of what has in fact occurred and is generally for the trier of fact to decide. *Bullard*, 91 Wn. App. at 755. As in *Bullard*, we conclude the trial court did not err in its determinations of proximate cause.

All three plaintiffs testified that they hired McClellan and AMI to legally represent them and believed that McClellan was an attorney whom they trusted and relied upon to handle their respective claims. They found out that he was not an attorney only after their claims had been settled. Mullen did not advise any of the plaintiffs that McClellan was not a lawyer; that AMI was not a law firm; that she, as a paralegal, had no real supervision; or that client funds did not go through a trust account. These omissions by Mullen sufficiently link her to the plaintiffs' later injury to establish cause in fact. *See Bullard*, 91 Wn. App. at 757. It was reasonable for the trial court to infer that if Mullen had properly advised the plaintiffs of the problems at AMI, more likely than not they would have withdrawn their cases from AMI in time to avoid being harmed by McClellan's fraudulent acts.

Legal causation turns on a policy question of how far the consequences of a defendant's acts should extend. *Blume*, 134 Wn.2d at 252. Whether legal liability adheres depends on " 'mixed considerations of logic, common sense, justice, policy, and precedent.' " *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985) (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)). Mullen contends that her connection to the plaintiffs' injuries is too remote because she did not render direct legal advice and that it is unjust to hold her, an employee paralegal, responsible for the criminal, intentional acts of her employer. The *Bullard* court rejected a similar argument asserted by Bailey, an attorney who allowed himself to become associated with McClellan:

Under the circumstances presented, particularly McClellan's financial difficulties, unlawful legal practice, and Bailey's failure to correct Bullard's misapprehensions, ordinary human experience should have led Bailey to expect Bullard would suffer some harm at McClellan's hands, regardless whether it was the precise harm suffered.

*Bullard*, 91 Wn. App. at 759.

Although Mullen was a paralegal, she is held to an attorney's standard of care because she worked on the plaintiffs' cases during a period of several months when she had no supervising attorney. The fact that she did not render legal advice directly does not excuse her; in fact, her failure to advise the plaintiffs of the improper arrangements at AMI is the very omission that breached her duty. Under these circumstances it is not unjust to hold her accountable as a legal cause of the plaintiffs' injuries.

As all the elements of negligence have been established, we affirm the judgment against Mullen.

## JOINT AND SEVERAL LIABILITY

The trial court entered judgment against Mullen, Noble, McClellan, and AMI jointly and severally for compensatory damages. These amounts were $15,067.25 for Tegman, $27,362 for Leszynski and $25,000 for Calixto. The court entered judgment against McClellan and AMI for substantial additional sums, including attorney fees, for criminal profiteering and Consumer Protection Act violations. Mullen and Noble object to being held jointly liable for the compensatory damages. They ask that the judgments be revised so that they are responsible for only that portion of the compensatory damages corresponding to the percentages of fault the trial court attributed to them.

The trier of fact, in all "actions" involving fault of more than one "entity," must "determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages." RCW 4.22.070(1). Citing

this statute, the trial court determined that Mullen was 10 percent at fault in each of the three cases; attorney Jescavage was 10 percent at fault in each of the three cases; and Noble was 5 percent at fault in Tegman's case. The court determined that McClellan and AMI had the remaining percentages in each case. The court then concluded that each of the plaintiffs was not at fault, and held all defendants jointly as well as severally liable in accordance with the statute:

> (b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants total damages.

RCW 4.22.070(1)(b).

Mullen and Noble argue that under this statute, the court should not have apportioned their fault with McClellan under this statute because he was an intentional tortfeasor and the term "fault" in the statute does not include intentional conduct. They rely on *Welch v. Southland Corp.*, 134 Wn.2d 629, 952 P.2d 162 (1998). In *Welch*, an unknown assailant robbed the plaintiff as he was leaving a convenience store owned by defendant Southland. The complaint alleged that Southland was negligent in failing to maintain a safe premises for its business invitees. The store asserted, as an affirmative defense, that under RCW 4.22.070(1) any fault on the store's part should be apportioned with the intentional acts of the unknown assailant. The trial court ruled that a negligent defendant is entitled to the benefit of the comparative fault statute, and that the jury would be permitted to attribute comparative fault to the unknown assailant—an "empty chair" entity. The potential effect of this ruling, as Southland readily acknowledged, was to make Southland liable for only its own percentage of the damages instead of being held jointly liable for all the damages. This was because the assailant was not a defendant, and joint liability arises only among defendants "against whom judgment is entered." RCW 4.22.070(b). The

Supreme Court reversed, holding that intentional acts are not included in the statutory definition of "fault" in the contributory and comparative fault statutes, and, thus, a negligent tortfeasor is not entitled to apportion liability to an intentional tortfeasor. Intentional torts are " 'part of a wholly different legal realm' " from the apportionment mechanism provided in RCW 4.22.070(1). *Welch*, 134 Wn.2d at 635 (quoting *Price v. Kitsap Transit*, 125 Wn.2d 456, 464, 886 P.2d 556 (1994)).

The judgment as entered by the trial court in this case did not violate the statute or *Welch*, because the court treated the action against McClellan and AMI as functionally separate from the action against Mullen, Noble and Jescavage. The court held McClellan solely liable on the causes of action alleging intentional conduct. The court held Mullen, Noble and Jescavage solely liable on the causes of action alleging negligence. Because the plaintiffs were free of fault, the court properly held the three negligent tortfeasors jointly as well as severally liable for the total compensatory damages caused by their negligence. That joint liability by the three negligent tortfeasors was the correct result is indicated by the result in *Welch*, which left Southland exposed to liability for the entire damage sustained by the plaintiff.

The difference from *Welch* is that in this case, the plaintiffs did make the intentional tortfeasor a defendant in the same suit, and did obtain entry of a judgment against him. This is not a distinction that leads to diminished liability for the negligent tortfeasors. The trial court's apportionment of "fault" to the intentional tortfeasor did not lead to a different result for Mullen and Noble as far as their joint liability is concerned than if the plaintiffs had sued them in a completely separate lawsuit, and it did not have any effect on the recovery of the fault-free plaintiffs. At most it affected the percentages of fault as between the defendants, an issue we need not evaluate as it has not been raised. Any error in the court's decision to apportion "fault" to McClellan has caused no prejudice so far as the issue of

joint liability is concerned, and therefore is not reversible.

Noble argues that reversal is necessary because the trial court failed to segregate the damages between the intentional tort and negligence claims. She relies on *Honegger v. Yoke's Washington Foods, Inc.*, 83 Wn. App. 293, 921 P.2d 1080 (1966). *Honegger* was a personal injury case brought by a shoplifter who was injured when the store's employees aggressively pursued him and committed assault and battery. The trial court refused the plaintiff's request to segregate damages caused by the employees' intentional conduct from damages caused by negligence, including the plaintiff's contributory negligence. The plaintiff appealed from a relatively small judgment. A new trial was found necessary because there had been no allocation of damages between intentional tort and negligence claims. As a result, it was not possible to determine on what basis the jury reached the amount awarded as damages:

> The verdict could have been an award for damages sustained solely as the result of the assault and battery, or could reflect other injuries. The jury could have concluded all the damages resulted from the employees' actions, since Mr. Honegger was trying to escape further injury. Since we do not know the basis of the award and how it may have been compromised by the contributory negligence instruction, the entire matter needs to be retried.

*Honegger*, 83 Wn. App. at 298-99.

The problem identified by the *Honegger* court does not exist in this case. The judgment separately sets forth the awards to the plaintiffs arising from McClellan's criminal profiteering and Consumer Protection Act violations, and holds only McClellan and his firm responsible for these sums.[3] Mullen and Noble are jointly liable with McClellan only for compensatory damages. The trial court measured

---

[3] The judgment summary in Tegman's case, for example, provides in pertinent part as follows:

"Name of Plaintiff/Judgment Creditor: Maria Tegman

"Attorney for Judgment Creditor: Gregory D. Lucas

Lucas & Lucas, P.S.

the compensatory damages caused by Mullen and Noble's negligence in exactly the same way as the compensatory damages caused by McClellan's intentional conduct: the value of the settlements the plaintiffs would have received if their claims had been handled by a competent attorney. Noble has not pointed out any basis upon which the trial court, as finder of fact, could have segregated the damages with greater precision.

The judgments are affirmed.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

AGID, C.J., and COLEMAN, J., concur.

Review denied at 145 Wn.2d 1034 (2002).

| "Judgment Debtors: | Deloris Mullen |
| --- | --- |
| | Lorinda Sue Noble |
| | Camille Jescavage |
| | G. Richard McClellan and Accident & Medical Investigations, Inc. ("AMI") |
| "Base Judgment Amount: | $15,067.25 (All defendants) |
| "Criminal Profiteering: | 50,000.00 (McClellan & AMI only) |
| "Consumer Protection Damages: | 10,000.00 (McClellan & AMI only) |
| "Judgment Amount: | $75,067.25 |

"Interest Rate: 12% per annum from the date hereof until paid.

| "Statutory Attorneys' Fees | $ 125.00 (All defendants) |
| --- | --- |
| "Attorneys' Fees: | $79,218.50 (McClellan & AMI only)" |