[No. 5196-0-III.   Division Three.   July 3, 1984.]

JAMES D. HOGAN, ET AL, *Appellants,* v. DON A. MONROE, ET AL, *Respondents.*

*Douglas D. Lambarth* and *Lambarth & Geissler,* for appellants.

*William Goss, Jr., Turner, Stoeve, Gagliardi & Goss, Rial R. Moulton,* and *Winston & Cashatt,* for respondents.

McInturff, J.—James D. Hogan and Patricia L. Hogan (Hogans) appeal an order of dismissal granted at the end of their case. The critical issue concerns whether the preparation of an addendum to an earnest money agreement by a real estate agent is the practice of law, and if so, what standard of care should be applied when evaluating that addendum. We reverse and remand.

In 1978, plaintiffs, Mr. and Mrs. Hogan, purchased a dairy farm near Newport, Washington, and operated it successfully until 1980. At that time, they listed the property for sale with Larry Brenner, an agent for Pend Oreille Properties. Mr. Brenner showed the property to Mr. and Mrs. Monroe, and on July 11, the Monroes signed an earnest money agreement offering to purchase the farm, equipment, cattle and hay for $340,000, subject to their obtaining a loan from Farmers Home Administration. The sale was to close no later than December 12, 1980.

On July 20, 1980, because the Monroes were having difficulty obtaining the necessary funds to close by December 12, Mr. Brenner proposed a lease option agreement, entitled addendum to earnest money agreement. Mr. Hogan

expressed a concern that the down payment would have to be large to secure the cattle, equipment and hay. Mr. Brenner responded he "could draw up a lease–option that would sew the Monroes in so tight they would have to perform on the lease option." Mr. Hogan testified Mr. Brenner further stated if the Monroes defaulted in any of the rental payments Mr. Hogan would be able to assume immediate possession and operation of the farm. The addendum was signed and the down payment received July 30.

In the fall, Mr. Brenner informed Mr. Hogan, who was by then in California, that the Monroes were having a difficult time operating the farm and selling their home, but that the loan application could be approved by January 1, 1981. Rent payments were late in September and October and no payment was received for November. In December, when rent was not forthcoming, legal proceedings were commenced. By then there was significant damage to the farm, cattle, equipment and dairy operation and payments owed by the Monroes on underlying contracts were in default. The Monroes were served on December 18 with a notice to pay or vacate, followed by filing of an unlawful detainer action. The Superior Court concluded the relationship between the parties was that of vendor–vendee and dismissed the action. Subsequently, an action to quiet title, ejectment and damages was filed February 10, 1981. Shortly thereafter the Monroes vacated the premises and were adjudicated bankrupt in Corvallis, Oregon. The quiet title action was amended to include an action against Pend Oreille Properties, Larry Brenner, agent, and George McAvoy, broker, now deceased.

The documents prepared by the realtor, which constituted the basis of this action, were entitled real estate purchase and sale agreement, dated July 11, 1980, and addendum to earnest money agreement, dated July 30, 1980. We concern ourselves only with the second document, the addendum, and whether the court erred as a matter of law when it determined the standard of care to be used in the preparation of this document.

The most recent case involving similar issues is *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983). There, the escrow agent prepared escrow instructions, an unsecured promissory note, a statutory warranty deed, and a modification of the promissory note. After closing, the purchaser borrowed heavily and used the property as security. A petition in bankruptcy was filed against the purchaser and it was subsequently learned he had departed the jurisdiction. Plaintiff sued the escrow company alleging it had engaged in the unauthorized practice of law and in so doing had caused the plaintiffs to lose $35,000, the value of the security interest, in addition to treble damages, attorney's fees and costs pursuant to RCW 19.86, Consumer Protection Act. The court stated at page 586:

> The selection and drafting of such documents is the work of lawyers and is not to be performed by laymen. We recognized in *In re Droker*, 59 Wn.2d 707, 719, 370 P.2d 242 (1962) that preparation of legal forms is the practice of law. . . .
>
> More recently, we reaffirmed out commitment "'to protect the public from the activity of those who, because of lack of professional skills, may cause injury whether they are members of the bar or persons never qualified for or admitted to the bar.'" *Hagan & Van Camp, P.S. v. Kassler Escrow, Inc.*, 96 Wn.2d 443, 447, 635 P.2d 730 (1981), quoting [*Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 54–55, 586 P.2d 870 (1978)] at 60.

In other real estate cases, escrow agents have been held liable for negligence under the attorney standard of care, *Andersen v. Northwest Bonded Escrows, Inc.*, 4 Wn. App. 754, 484 P.2d 488 (1971); *Hecomovich v. Nielsen*, 10 Wn. App. 563, 518 P.2d 1081 (1974), except where the damages were not reasonably foreseeable. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 33 Wn. App. 129, 652 P.2d 962 (1982).[1]

---

[1]Remanded by the Supreme Court to the Court of Appeals, 101 Wn.2d 1009 (1984). The Court of Appeals, by order dated April 5, 1984, remanded the case to the Superior Court for reconsideration in light of *Bowers*.

The Monroes cite *Commonwealth v. Jones & Robins, Inc.,* 186 Va. 30, 41 S.E.2d 720 (1947), which considers the question of whether the preparation by realtors of deeds, deeds of trust, mortgages and deeds of release constituted the illegal practice of law. The court's decision affirmed a recommendation made by the Committee on the Integration of the Virginia State Bar that a realtor was not engaged in the practice of law when he prepared preprinted forms, including earnest money agreements, as an incident to the regular transaction of his business.

■ In the case before us, the addendum substantially altered the legal rights of the parties with respect to land and personal property. In the prior unlawful detainer action, the trial court characterized the relationship of the parties as vendor to vendee "where the person in possession has a right of a prospective purchaser or where an agreement between the parties leaves an equity of redemption in the person in possession." In addition to redemption rights, under the addendum the purchasers took possession of the realty, substantial expendable personal property, livestock and equipment; they assumed financial responsibility for making payments on underlying contracts; they assumed the responsibility of operating a successful dairy. The sellers, in contrast, were deprived of adequate security and legal remedies should the purchasers default. Thus, it was reasonably foreseeable from the face of the document that problems could occur.

In *Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 54, 586 P.2d 870 (1978), the court said:

> It is the nature and character of the service performed which governs whether given activities constitute the practice of law. . . .
> The "practice of law" does not lend itself easily to precise definition. However, it is generally acknowledged to include not only the doing or performing of services in the courts of justice, throughout the various stages thereof, but in a larger sense includes legal advice and counsel and the preparation of legal instruments by

which legal rights and obligations are established.

There is no doubt legal rights and obligations were established by the addendum. In an offer of proof made by the Hogans, testimony by attorney Paul Bastine would have been presented showing the high degree of skill and expertise necessary to adequately protect both parties. That degree of skill was necessary (1) to completely define the legal relationship between the parties, (2) to provide a complete explanation of the risks involved by the transfer of possession of assets, (3) to explain the types of security agreements which were available, (4) to provide for default in case either party failed to perform. Under the circumstances, the addendum was as complicated and legally significant as the ultimate real estate contract, deed and other documents necessary to close the sale.

Thus, under the rule announced in *Washington State Bar Ass'n* we conclude that the drafting and use of the addendum constituted the practice of law because it established legal rights and obligations of the parties similar to those in a real estate contract. The realtor who drafted it must be held to the standard of care of a reasonably prudent attorney. The duties of one who, without a license, attempts to practice law are the same duties as those of a licensed attorney. *Bowers,* at 587 (quoting *Burien Motors, Inc. v. Balch,* 9 Wn. App. 573, 513 P.2d 582 (1973)).

■ Pend Oreille Properties argues the actions of the realtors fall within the "pro se" exception[2] to the general rule that one engaged in the practice of law must exercise the standard of care of a reasonably prudent attorney. *Washington State Bar Ass'n* states at pages 56–57:

Additionally, we have recognized that a party to a legal document may select, prepare or draft that document without fear of liability for unauthorized practice. . . . This exception to our general prohibition against the practice of law by laypersons is analogous to the "pro se" exception for court proceedings. Both exceptions are

---

[2]*See* Admission to Practice Rule 12.

founded upon the belief that a layperson may desire to act *on his own behalf* with respect to *his* legal rights and obligations without the benefit of counsel.

The "pro se exceptions" are quite limited and apply only if the layperson is acting solely *on his own behalf.* . . . Moreover, a layperson who receives compensation for such legal services may not rely upon the "pro se" exception. The receipt of compensation is conclusive evidence that the layperson is not merely acting for himself but has assumed the additional burden of acting for another. . . . In such instances, a layperson will be liable for the unauthorized practice of law *even though* he is a party to, or asserts a substantial interest in, the document or court proceeding.

The earnest money agreement and addendum each refer to a "commission". Without further explanation, this is convincing evidence the realtors represented another party, in this instance, the Hogans. Hence, we find under the present circumstances the realtors were not acting solely on their own behalf and did not come within the pro se exception.

The judgment of the Superior Court is reversed; the case is remanded for further proceedings to determine whether defendants met the attorney standard of care in the preparation of the addendum.

GREEN, A.C.J., and THOMPSON, J., concur.