969 P.2d 93 (1998)
137 Wash.2d 93
Ed and Jeanne PERKINS, husband and wife and the marital community composed thereof, on behalf of themselves and all similarly situated, Appellants,
v.
CTX MORTGAGE COMPANY, a Washington corporation, Respondent.
No. 64581-7.
Supreme Court of Washington, En Banc.
Argued January 14, 1998.
Decided January 7, 1999.
Reconsideration Denied February 22, 1999.
*94 Mary E. Fairhurst, Charles K. Wiggins, and Kenneth W. Masters on behalf of the Washington State Bar Association, amicus curiae.
Hillis, Clark, Martin & Peterson, Louis D. Peterson, Lynne M. Cohee, Seattle, Amicus Curiae on Behalf of Washington Mortgage Lenders Association.
Leen & Moore, David A. Leen, Seattle, for Appellant.
Graham & Dunn, Edward W. Pettigrew, Larry J. Smith, Seattle, for Respondent.
DURHAM, C.J.
At issue is whether a mortgage lender engages in the unauthorized practice of law by charging a fee for the production and completion of residential home loan documents. The trial court dismissed the Plaintiffs' class action, concluding that charging a fee for the production of such documents is not the unauthorized practice of law where lay employees participating in such document preparation do not exercise any legal discretion. We agree and affirm.
Ed and Jeanne Perkins borrowed money from CTX Mortgage Company (CTX) to purchase their home. CTX charged a $250 "document preparation" fee. The fee is not charged with respect to any particular document.[1] Instead, it is charged to offset the overhead associated with the preparation of the extensive documentation necessary to process and complete loan transactions. CTX prepared various legal and nonlegal documents necessary to process and complete the Perkinses' loan.[2] In preparing *95 these documents, CTX attorneys performed all tasks requiring the exercise of legal judgment. For example, CTX attorneys selected the loan products, created the documents necessary for each loan product, and supervised the programming of CTX's central computer, which generates form templates in the branch offices. At the branch offices, lay employees entered customer information such as Social Security numbers, employer information, and bank account numbers in response to computer prompts depending on the type of loan the Perkinses had selected. Lay employees also entered the loan amount, interest rate, down payment, and other factual data. Attorneys prepared the other documents requiring the exercise of legal judgment. For example, the Perkinses' attorneys prepared the purchase and sale agreement, the earnest money agreement, the HUD-1, the excise tax affidavit, the warranty deed, and the escrow instructions.
The Perkinses filed a class action in King County Superior Court on behalf of CTX borrowers who were or would be charged a document preparation fee. They sought a declaratory judgment that CTX engaged in the unauthorized practice of law by charging such a fee for the preparation of loan documents. They further argued that such unauthorized practice of law violated the Consumer Protection Act, RCW 19.86(CPA). The trial court certified the class as consisting of CTX borrowers who had paid a fee for loan documents prepared by CTX and all such future borrowers. After discovery, both parties moved for summary judgment, which was granted in favor of CTX, dismissing the Perkinses' claims. The Perkinses moved for reconsideration, which was denied, before appealing to the Court of Appeals. CTX moved for direct review by this court, which was granted.

I
The Perkinses contend that CTX engaged in the practice of law by selecting and completing the various documents necessary to process the Perkinses' residential home loan. This cannot be seriously disputed. The practice of law includes the selection and completion of legal instruments by which legal rights and obligations are established. Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n, 91 Wash.2d 48, 54-55, 586 P.2d 870 (1978) (Great Western); see also In re Discipline of Droker, 59 Wash.2d 707, 370 P.2d 242 (1962); Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash.2d 697, 251 P.2d 619 (1952) (WSBA v. WAR). It is established that the selection and preparation of promissory notes and deeds of trust is the practice of law. Great Western, 91 Wash.2d at 55, 586 P.2d 870. CTX and amicus Washington Mortgage Lenders Association would have us focus only on the data inputting tasks that lay employees perform. However, CTX's attorneys created the loan documents and helped program CTX's computer system to select the appropriate document templates. Regardless of how CTX allocates tasks between attorney employees and lay employees, CTX employees select and complete those legal documents incident to residential home financing. Thus, CTX engaged in the practice of law by selecting and preparing the various legal documents involved in this case. The question then *96 becomes whether such activities are authorized.

II
Both the Perkinses and the Washington State Bar Association (WSBA) contend that mortgage lenders are authorized to prepare the legal instruments necessary to complete loan transactions as long as they do so without charge. But they argue that CTX's otherwise permissible loan document preparation became unauthorized upon the charging of a fee.[3] This preoccupation with the fee is misplaced. We have firmly rejected the notion that a lay person's authority to prepare legal instruments turns on whether a fee is charged.
In Great Western, the unanimous court held that a bank, by selecting and completing legal documents, including promissory notes and deeds of trust, engaged in the unlawful practice of law where a lay employee filled out the documents and the bank charged a fee for the service. After resolving that the bank had engaged in the practice of law, the court considered whether such actions were unauthorized.
[W]e have recognized that a party to a legal document may select, prepare or draft that document without fear of liability for unauthorized practice. This exception to our general prohibition against the practice of law by laypersons is analogous to the "pro se" exception for court proceedings. Both exceptions are founded upon the belief that a layperson may desire to act on his own behalf with respect to his legal rights and obligations without the benefit of counsel.
The "pro se" exceptions are quite limited and apply only if the layperson is acting solely on his own behalf. Moreover, a layperson who receives compensation for such legal services may not rely upon the "pro se" exception. The receipt of compensation is conclusive evidence that the layperson is not merely acting for himself but has assumed the additional burden of acting for another.
Great Western, 91 Wash.2d at 56-57, 586 P.2d 870 (citations omitted) (emphasis omitted). Thus, the court held that by charging a fee, Great Western "removed itself from the protection afforded by our `pro se' exception to the general prohibition against the unauthorized practice of law." Great Western, 91 Wash.2d at 57-58, 586 P.2d 870. The Perkinses contend that Great Western is squarely on point. However, our next unauthorized practice of law case cogently explains how the fee issue in Great Western was irrelevant to the unauthorized practice of law question.
In Hagan & Van Camp, P.S. v. Kassler Escrow, Inc., 96 Wash.2d 443, 635 P.2d 730 (1981), a law firm sued to enjoin an escrow company from preparing earnest money agreements and other acts as the unauthorized practice of law. The unanimous court rejected the proposition that, by not charging a fee, the escrow company's actions were authorized under Great Western.
Petitioner relies heavily upon the fact that no additional charges were made for the services. Petitioner relies on the holding in Great Western to support this aspect of its argument. Such reliance is misplaced. Great Western did charge a fee so the court expressly limited its holding in the case to a situation where a fee is charged. The fact of compensation is irrelevant, however, except as to provide evidence of the fact that a lay person is acting for another. We have clearly held that it is the nature and character of the service rendered rather than the fact of compensation for it that governs.

Kassler Escrow, 96 Wash.2d at 451, 635 P.2d 730 (citations omitted) (emphasis added).
Notwithstanding this unambiguous language, both the Perkinses and amicus WSBA rely on our next and last unauthorized practice of law case, Cultum v. Heritage House Realtors, Inc., 103 Wash.2d 623, 694 P.2d 630 (1985), as further support for the proposition that charging a fee for the preparation of *97 legal documents by lay persons is unauthorized.
In Cultum, a real estate agent prepared an earnest money agreement setting forth the buyer's offer to purchase a home. The buyer asked the agent to insert a structural inspection contingency clause. The agent inserted the standard clause used by her employer. Both the clause and the preprinted earnest money agreement were drafted by lawyers. After the inspection revealed some minor problems, the buyer sought to rescind the offer pursuant to the inspection contingency based on her subjective dissatisfaction. The seller refused to rescind and construed the inspection contingency to require major structural defects based on an objective standard before it could be invoked. The buyer finally recovered her earnest money and sued the real estate company, seeking among other things an injunction against their alleged unauthorized practice of law.
The court held that, although the real estate agent engaged in the practice of law, her actions were not unauthorized. The court was divided four to four, however, on the rationale. The lead opinion ruled narrowly:
It should be emphasized that the holding in this case is limited in scope. Our decision provides that a real estate broker or salesperson is permitted to complete simple printed standardized real estate forms, which forms must be approved by a lawyer, it being understood that these forms shall not be used for other than simple real estate transactions which arise in the usual course of the broker's business and that such forms will be used only in connection with real estate transactions actually handled by such broker or salesperson as a broker or salesperson and then without charge for the simple service of completing the forms.
Cultum, 103 Wash.2d at 630, 694 P.2d 630 (emphasis added). The Perkinses emphasize the "without charge" language without discussion, apparently assuming that a charge would render the action unauthorized. Br. of Appellants at 22. Amicus WSBA similarly suggests that the Cultum court relied on the fact that there was no separate charge levied. Br. of Amicus Curiae WSBA at 13. Both the Perkinses and the WSBA are mistaken.
The lead opinion necessarily confined its holding to the facts of the case. The realty company did not charge a fee; therefore, the court could only have speculated in dictum whether the charging of a fee would have rendered the realty company's actions unauthorized. The court, therefore, properly left open the question of whether a fee would have changed the result.
Moreover, any suggestion in the lead opinion that the fee issue was dispositive failed to carry a majority. Granted, four justices reasoned that "[t]he fact that brokers and salespersons will complete these forms at no extra charge, whereas attorneys would charge an additional fee, weighs heavily toward allowing this choice." Cultum, 103 Wash.2d at 628-29, 694 P.2d 630. However, the other four justices agreed in the result only and disagreed with the lead opinion's rationale. "[T]he fact that the agreement is completed without charge is irrelevant." Cultum, 103 Wash.2d at 634, 694 P.2d 630 (Brachtenbach, J., concurring). Thus, Cultum does not stand for the proposition that charging a fee for the lay preparation of legal documents amounts to the unauthorized practice of law.
The rule remains that "[t]he nature and character of the service rendered, rather than the fact of compensation for it, should govern its classification and relation to the public interest." WSBA v. WAR, 41 Wash.2d at 699, 251 P.2d 619; see also Great Western, 91 Wash.2d at 54, 586 P.2d 870 ("It is the nature and character of the service performed which governs whether given activities constitute the practice of law."). CTX is not asserting its actions are authorized under the pro se exception; therefore, it unnecessary to look to the document fee to rebut a claim that CTX was acting solely on its behalf. Thus, whether CTX charged a fee is irrelevant to the question of whether they have engaged in the unauthorized practice of law. Instead, the essential inquiry is whether a mortgage lender is authorized to prepare the legal documents that are ordinarily incident to its financing activities when lay employees participating in such document *98 preparation do not exercise any legal discretion.

III
CTX argues that its activities are authorized because lay employees do not exercise any legal discretion during their participation in the document preparation process. Thus, there is no risk of public harm from incompetent lawyering. We are persuaded that this position is consistent with our historical approach to the unauthorized practice of law.
Admittedly, we have often spoken broadly in condemning the practice of lay persons selecting and completing preprinted form legal documents. However, this broad language must be considered in light of the particular circumstances at issue in those cases. Our underlying goal in unauthorized practice of law cases has always been the promotion of the public interest. Consequently, we have prohibited only those activities that involved the lay exercise of legal discretion because of the potential for public harm.
In WSBA v. WAR, this court rejected a broker's argument that he had merely filled in the blanks in form legal documents, stating:
The representation of qualification and competence to do work of a legal nature and to advise upon that subject ... is implicit in the preparation of any legal document by the selection and completion of a blank form....
WSBA v. WAR, 41 Wash.2d at 701, 251 P.2d 619. Despite this broad language, however, the court ruled very narrowly, enjoining the broker from doing only the type of work he performed with one particular deed. WSBA v. WAR, 41 Wash.2d at 701, 251 P.2d 619. In that deed he had drafted and inserted an ambiguous clause regarding mortgages to which the property was subject. WSBA v. WAR, 41 Wash.2d at 698, 251 P.2d 619. The concurrence pointed out that by limiting its holding, the majority tacitly approved of the broker's other activities in which he filled in the names of parties and other objective information. WSBA v. WAR, 41 Wash.2d at 702, 251 P.2d 619 (Donworth, J., concurring). This result is not surprising given that the court's guiding principle was to protect against "[t]he probability of injurious consequences from the acts of the unskilled." WSBA v. WAR, 41 Wash.2d at 699, 251 P.2d 619. The potential harm of allowing lay persons to draft clauses was manifested in the uncertainty regarding the number and value of mortgages to which the property was subject. In contrast, the court allowed the mere inputting of objective data because of the unlikelihood that such action would significantly prejudice individuals' legal interests.
In In re Discipline of Droker, 59 Wash.2d 707, 370 P.2d 242 (1962), the court held that lay employees of an escrow company engaged in the unauthorized practice of law by completing form legal documents. The court observed that "the preparation of a legal form is doing work of a legal nature, and if done by a ... layman, may be enjoined." Droker, 59 Wash.2d at 719, 370 P.2d 242. Yet, the lay employees went far beyond entering objective data into these forms. The employees drafted escrow instructions, selected the forms they deemed appropriate for various transactions, drafted earnest-money receipts, drafted clauses modifying form legal documents, and explained to buyers and sellers the meaning and effect of the documents they drafted. Droker, 59 Wash.2d at 719, 370 P.2d 242. It is self-evident that the public policy concern of guarding against incompetent lawyering is well served by our prohibiting such activities by lay persons.
In Great Western, this court held that a bank had engaged in the unauthorized practice of law by permitting a lay employee to select and complete form legal documents involved in closing both the real estate loan between it and the buyer, and the sale between the buyer and the seller. The court concluded that "the selection and completion of form legal documents, or the drafting of such documents, including deeds, mortgages, deeds of trust, promissory notes and agreements modifying these documents constitutes the practice of law." Great Western, 91 Wash.2d at 55, 586 P.2d 870. Yet, the lay employee at issue went well beyond the mere inputting of data. She modified the form deeds of trust and promissory notes, and closed both the loan and the sale between the purchaser and seller. Great Western, 91 Wash.2d at 50, 586 P.2d 870. The court *99 observed that "[t]he services at issue here are ordinarily performed by licensed attorneys, involve legal rights and obligations, and by their very nature involve the practice of law." Great Western, 91 Wash.2d at 55, 586 P.2d 870. The court's decision rested firmly on the public interest rationale.
It is our duty to protect the public from the activity of those who, because of lack of professional skills, may cause injury whether they are members of the bar or persons never qualified for or admitted to the bar.
Great Western, 91 Wash.2d at 60-61, 586 P.2d 870 (citation omitted). This same public policy language guided our two subsequent unauthorized practice of law cases. See Hagen & Van Camp, P.S. v. Kassler Escrow, Inc., 96 Wash.2d 443, 447, 635 P.2d 730 (1981); Cultum v. Heritage House Realtors, Inc., 103 Wash.2d 623, 627, 694 P.2d 630 (1985).
The deciding principle in each of these cases is our duty to protect the public from the potential harm of the lay exercise of legal discretion. But we have never prohibited the mere clerical entry of data into a printed legal form.[4] Indeed, we have tacitly authorized lay persons to fill in the names of parties, the legal descriptions of properties, and other similar information[5] and have expressly left open whether mere scrivening would constitute the unauthorized practice of law.[6]
Most recently, we have even authorized nonlawyers to exercise some legal discretion by allowing them to insert lawyer drafted clauses into lawyer drafted real estate forms. Cultum, 103 Wash.2d at 630, 694 P.2d 630. The Cultum lead opinion was persuaded that the strong public interest in convenience and limiting costs weighed in favor of allowing real estate professionals to prepare the legal instruments necessary for conveyancing. Cultum, 103 Wash.2d at 628, 694 P.2d 630. Likewise, the concurrence's pragmatic concern that certain real estate practices are "fact[s] of life in the real world" implicitly recognizes the logistical and financial burden on the public that would result from imposing lawyers on every stage of real estate conveyancing. Cultum, 103 Wash.2d at 636, 694 P.2d 630 (Brachtenbach, J., concurring). Thus, our decision should also be guided by the public interest in convenience and low cost.
The resolution of this case, therefore, depends on balancing the competing public interests of (1) protecting the public from the harm of the lay exercise of legal discretion and (2) promoting convenience and low cost. Washington unauthorized practice of law cases are replete with instances of lay exercise of legal discretion causing public harm.[7] Yet, when the role of lay persons in selecting and completing form legal documents is reduced to entering objective data, the lay person's actions are unlikely to result *100 in the uncertain legal rights with which this court has been concerned. Thus, the risk of public harm is low. Indeed, the Perkinses have never alleged that their loan documents were deficiently drafted or that their legal rights were prejudiced in the least.
Moreover, permitting mortgage lenders to prepare loan documents in the way the CTX does relieves borrowers of the cost and inconvenience of having attorneys prepare their loan documents. Ironically, were the Perkinses to prevail, future borrowers would bear the additional cost of having attorneys prepare their loan documents, which would likely exceed that portion of the Perkinses' document preparation fee attributable to legal documents.
Thus, we hold that, whether or not a fee is charged, lenders are authorized to prepare the types of legal documents that are ordinarily incident to their financing activities when lay employees participating in such document preparation do not exercise any legal discretion. Moreover, even though the Perkinses have not alleged any harm, in order to fully safeguard the public interest we further hold that lenders must comply with the standard of care of a practicing attorney when preparing such documents. See Cultum, 103 Wash.2d at 631, 694 P.2d 630; Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 586-87, 675 P.2d 193 (1983). Our result necessarily disposes of the CPA claim. The trial court dismissal of the Perkinses' class action is affirmed.
DOLLIVER, SMITH, GUY, JOHNSON, TALMADGE and SANDERS, JJ., concur.
MADSEN, J. (dissenting).
I respectfully dissent. The majority affirms the trial court's dismissal of the Perkinses' class action suit against CTX Mortgage Co. (CTX), finding that although CTX engaged in the practice of law by preparing legal documents, such practice was authorized because CTX bifurcated the process between its lay employees and lawyers. The majority is persuaded that CTX's bifurcation limits the risk of public harm and promotes convenience and low costs. The majority's general policy considerations, however, cannot be reconciled with the fact that the practice of law in this case is conducted by unqualified lay employees and unlicensed (in Washington) lawyers who are drafting, selecting, and completing legal documents. Washington case law clearly prohibits lay persons from preparing legal documents, such as those at issue in this case, unless specifically exempted by this court, or certified by the Limited Practice Board. Moreover, Washington's Admission to Practice Rules (APR) strictly prohibit unlicensed lawyers from practicing law in Washington. Nevertheless, the majority holds that mortgage lenders, such as CTX, are authorized to prepare legal documents because lay employees participating in such document preparation do not exercise any legal discretion. I dissent because bifurcation of a real estate loan transaction between unqualified lay persons and unlicensed lawyers circumvents the rules of legal practice in our state, particularly APR 12, and as a result compromises, rather than promotes, the public interest.
Drafting, selecting, and completing legal documents is a process that entails the exercise of legal discretion at each stage.[1] Indeed, Washington holds that the practice of law even includes the selection and completion of preprinted form legal documents. Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n, 91 Wash.2d 48, 55, 586 P.2d 870 (1978); In re Discipline of Droker, 59 Wash.2d 707, 370 P.2d 242 (1962); Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash.2d *101 697, 251 P.2d 619 (1952). The only exceptions to this prohibition are closing officers certified by the Limited Practice Board,[2] and real estate brokers or salespersons who are both licensed under RCW 18.85[3] and held to the standard of care demanded of a lawyer. Cultum v. Heritage House Realtors, Inc., 103 Wash.2d 623, 627, 694 P.2d 630 (1985) (in addition to the licensing requirements of RCW 18.85, the court held real estate brokers and salespersons to a lawyer's standard of care). I note it is not surprising that our series of unauthorized practice of law cases involve real estate transactions and that we have traditionally applied a strict analysis where lay persons participate in the selection and completion of legal documents.[4] This is because the preparation of legal documents such as deeds, mortgages, and promissory notes fix the various parties' legal rights and duties. Cultum, 103 Wash.2d at 627, 694 P.2d 630.
In this case, there is no question that CTX engaged in the practice of law by preparing legal documents for the Perkinses' real estate loan transactions. However, in determining whether CTX was authorized to practice law, the majority does not analyze the nature of how CTX drafts, selects, and completes its legal documents. Instead, the majority is persuaded that CTX's bifurcation of the process is proper, simply characterizing such practice as "consistent with our historical approach to the unauthorized practice of law." Majority at 98. The majority states that Cultum "left open" whether mere clerical entry of objective data on legal forms is prohibited.
Contrary to the majority's view, however, Washington has never held that the practice of law may be severed into two categorically separate tasks of legal discretion and scrivener-like activities. Such a position construes the practice of law as an easily divisible process whereby the skill of legal analysis *102 may be divorced from application of the facts.[5] Instead, our line of unauthorized practice of law cases actually demonstrates that completion of legal documents not only constitutes the practice of law, but the act itself, which includes the entry of a customer's profile, entails the exercise of legal discretion. Indeed, the facts in Cultum clearly demonstrate that merely entering information on the blanks of standardized legal forms constitutes the exercise of legal discretion, which thereby prompted the creation of a narrow exception for real estate agents.
Responding to the majority's view is made difficult in this case because the majority adopts an inconsistent view of whether CTX lay employees are engaged in the unauthorized practice of law. The majority initially treats the conduct of CTX lay employees as mere scrivening that does not involve legal discretion and is, therefore, not an activity that constitutes the unauthorized practice of law. In articulating its policy-based holding, however, the majority supports the opposite proposition by suggesting that even if inserting data on legal forms does constitute the unauthorized practice of law, in Cultum this court already authorized some lay persons to do so based on the strong public interest in convenience and limiting costs. Cultum, 103 Wash.2d at 630, 694 P.2d 630. Herein lies the majority's contradiction: when CTX lay employees complete legal forms, they merely act as scriveners who do not exercise legal discretion; but when a licensed real estate agent engaged in the same activity, Cultum implicitly found that completion of legal forms involves legal discretion.[6] Because of this fundamental inconsistency, the majority provides no clear guidance for later courts to determine how and when legal discretion is effectively parceled out from the entry of "objective" information.
In its desire to uphold CTX's bifurcation of the real estate loan transaction, the majority purports to rely on Cultum. Because Cultum permitted real estate brokers and salespersons to complete forms prepared by lawyers, the majority, on policy grounds, would extend that principle to other lay persons such as CTX employees. The analogy, however, overstates the policy announced in Cultum and overlooks a critical distinction between that case and the majority's resolution here. In Cultum, a real estate agent completed a standardized earnest money agreement and addendum, which involved filling out forms drafted by lawyers. Cultum, 103 Wash.2d at 625-26, 694 P.2d 630. The majority finds that CTX is similarly engaged in completing preprinted legal forms. However, it gives short shrift to the critical fact that Cultum authorized only licensed real estate brokers or licensed salespersons to prepare, i.e., fill out, preprinted legal documents in connection with real estate transactions. Id. Unlike the majority's resolution here, Cultum did not authorize an overbroad class of lay persons to prepare such documents without standards of accountability.
The majority fails to realize that the conduct at issue here is the same as in Cultum, and that the court authorized the practice only because the group of newly exempt lay persons were licensed real estate agents subject to RCW 18.85 and held to a lawyer's standard of care.[7] Here, the majority's broad holding offers no protection of the public interest. Although the majority holds that lenders must comply with the standard of care of a practicing attorney when preparing such documents, the majority goes far beyond Cultum, allowing any lay person to prepare and complete legal documents even though the lay person is neither a real estate agent nor a certified closing officer under APR 12. Thus, contrary to the principles *103 articulated in Cultum, the majority expands the class of nonlawyers to practice law without regard to the limitations established in both Cultum and APR 12.[8]
The Cultum court's reluctance to create the exception for real estate agents must be understood in light of both the court's ruling in Hagen & Van Camp, P.S. v. Kassler Escrow, Inc., 96 Wash.2d 443, 635 P.2d 730 (1981) and the stringent language which followed in APR 12. In Hagen & Van Camp, the court ruled unconstitutional a statute that authorized escrow agents and officers to select, prepare, and complete documents and instruments. Not only did the court find the statute an invasion of the Supreme Court's exclusive power to regulate the practice of law, but the court also found that the statute was dangerously flawed because "it virtually [gave] free reign to almost anyone of any degree of intelligence to perform any task related to real property or personal property transactions." Id. at 448, 635 P.2d 730. In a similar vein, the Cultum court's reluctance stemmed from the concern that not all lay persons possess the skills and training required to properly perform the tasks related to real estate transactions. To this end, the Cultum court reasoned that authorizing licensed real estate brokers and licensed salespersons is proper given RCW 18.85 and provided that preparation of documents is limited to those documents related to the main business of real estate transactions, and that such individuals adhere to the standard of care of a practicing lawyer. Cultum, 103 Wash.2d at 631, 694 P.2d 630.
In January 1983, after Hagen & Van Camp, and just two years prior to Cultum, APR 12 was adopted to authorize certain lay persons, deemed "closing officers," to select, prepare, and complete legal documents. APR 12 not only defines specific prerequisites and application procedures for closing officers, but it also limits a closing officer's scope of practice to selecting, preparing, and completing documents for specific use in closing a loan, extension of credit, or sale or other transfer of real or personal property. See APR 12(d). Moreover, the rules further provide that prior to the performance of services, all parties must have agreed in writing to the basic terms and conditions of the transaction. See APR 12(e). The closing officer must also advise the parties that a closing officer is not an advocate for either party; the documents will affect the parties' legal rights; the parties' interests may differ; the parties may obtain counsel; and inform the parties that a closing officer cannot provide legal advice as to the manner in which the documents affect the parties. Id. Contrary to Hagen & Van Camp and APR 12, the majority expands the class of exempt lay persons by authorizing mortgage lenders' lay employees to participate in legal document preparation. Such a view renders the requirements of both APR 12 and Cultum superfluous.
CTX claims that documents which require the exercise of legal discretion are prepared by lawyers or closing officers, and that all documents are reviewed by a closing officer prior to their execution by CTX. Decl. of Larry J. Smith Re Exs. in Supp. of Def.'s Summ. J. Mot., Ex. H at 2-4. CTX concedes that a closing officer participated in the entire loan process in only some of the loans provided to the plaintiff class. Id. Otherwise, CTX's lay employees are assigned the primary task of completing legal documents on the computer prior to a closing officer's review. Id. Presumably, although not clear from the record, CTX loan officers conduct the interviews and consultations with customers to determine the type of loan that best fits the needs of customers. From there, however, the computer-generated forms require CTX's lay employees to input data based on customers' credit reports, intake forms, and other information gained from the "loan qualification process" and "credit investigation." Id. CTX further admits that some of its lay employees who participate in the document preparation process are not certified closing officers, and are neither licensed real estate brokers nor licensed salespersons. Based on CTX's own description of its bifurcated process, CTX fails to demonstrate *104 that its lay employees who complete form legal documents satisfy either the requirements of APR 12 or the Cultum exception. Thus, I would hold CTX's lay employees are engaged in the unauthorized practice of law.
Still, the majority is convinced that CTX should be authorized to prepare legal documents because, to the extent that CTX exercises legal discretion, the task is delegated to in-house counsel in Dallas, Texas. In this regard, the majority finds that CTX lawyers perform all tasks requiring the exercise of legal judgment.
In order to practice law in Washington, however, an individual must pass the Washington State bar examination, be an active member of the Washington State Bar Association, and be admitted by order of the Washington State Supreme Court. APR 1(b). Out-of-state lawyers who wish to appear as a lawyer in the trial of any action or proceeding in this state, must apply for special admission with the court or tribunal where the action is pending. APR 8(a), (b). Thus, even if this court were to adopt the bifurcation model advanced by CTX, the Admission to Practice Rules dictate that CTX must retain counsel who either have been admitted to the Washington State Bar or granted special permission.
CTX does not claim that its legal work is conducted by licensed Washington lawyers or Texas lawyers granted special admission. Rather, CTX simply defends its practice on grounds that it retains in-house counsel in Dallas, Texas where much of the legal discretion is exercised in preparing legal documents for use in Washington real estate transactions. Given that CTX is engaged in the practice of law but has delegated legal discretion to lawyers who have neither been shown to be admitted to the Washington Bar nor granted special permission by a Washington tribunal, this court should conclude that CTX's in-house counsel are unauthorized to practice law in Washington.
CTX fails to demonstrate how bifurcation of the real estate loan transaction ensures that qualified individuals exercise legal discretion. If CTX's lay employees do not exercise legal discretion because their task is reduced to scrivening, and if CTX's in-house counsel are unlicensed to practice law in Washington, then CTX is improperly drafting, selecting, and completing legal documents. It is at this juncture where CTX's bifurcation model collapses and the circumvention of our rules of legal practice becomes most apparent.
Despite the concerns expressed in our cases and the restrictive language dictated by our rules of practice, however, the majority argues that the inquiry in this case turns on an analysis of competing policy interests: the risk of public harm and the promotion of convenience and low cost. The majority believes that CTX's activities are unlikely to result in uncertain legal rights, and that the public interest in convenience and low cost weigh in favor of permitting mortgage lenders to prepare legal documents. To justify this dual policy, the majority cites the pragmatic concerns and policy interests expressed in Cultum. However, in Cultum the court found that public policy was in conjunction with its narrow holding permitting licensed real estate brokers and licensed salespersons to complete preprinted legal forms, provided such individuals comply with the standard of care of a practicing lawyer. Cultum, 103 Wash.2d at 631, 694 P.2d 630. This heightened standard of care was in addition to the licensing requirements already in place for real estate brokers and salespersons. Id. at 628, 631, 694 P.2d 630. Thus, the court furthered the public interest by specifically requiring that only licensed real estate brokers and salespersons would be permitted to prepare legal documents which arise in the usual course of their business, and in completing those documents would be held to the same standard as a practicing lawyer.
In this case, the bifurcated real estate loan transaction provides no similar protection to the public. CTX's lay employees are not subject to the standard of care of a practicing lawyer because they are presumed to exercise no legal discretion. Moreover, there is no assurance or indication in the record that CTX's in-house counsel have been properly admitted to practice Washington law and are beholden to the local standard of care. Hence, the majority's general policy considerations *105 cannot be reconciled with the fact that CTX employs unqualified lay persons and unlicensed lawyers to prepare legal documents in connection with real estate loan transactions. See Washington State Bar Ass'n, 91 Wash.2d at 60, 586 P.2d 870 ("[i]t is our duty to protect the public from the activity of those who, because of lack of professional skills, may cause injury whether they are members of the bar or persons never qualified for or admitted to the bar.").
As the majority itself points out, Washington's unauthorized practice of law cases are replete with instances of lay exercise of legal discretion causing public harm; and each case is directly within the context of real estate transactions. Although the majority attempts to distinguish CTX from those cases on grounds of public policy, those cases present similar facts where lay persons were found to exercise legal discretion in the completion of legal documents.[9] The only distinguishing feature of CTX's practice is that lay employees enter data into a more sophisticated computerized system. Thus, because the nature of the real estate loan transaction remains the same as our prior cases, the facts here do not warrant authorizing such an overbroad class of individuals to engage in the practice of lawespecially where there is great difficulty ascertaining the extend to which CTX's lay employees actually refrain from exercising legal discretion.
That the plaintiff class in this case demonstrates little or no harm was suffered should not color the issue of whether all mortgage lenders should be authorized to practice law. Moreover, that the Perkinses hired their own lawyer can neither preclude the plaintiff class of declaratory relief, nor discount the prospect of future harm to customers of other mortgage lenders. For it is not this court's function merely to redress past injury but to prevent future harm where possible. Washington State Bar Ass'n, 91 Wash.2d at 60-61, 586 P.2d 870 (citing In re Discipline of Droker, 59 Wash.2d at 721, 370 P.2d 242).
Finally, the majority discusses at great length the $250 fee which CTX charged as part of its document preparation costs. This fee is just further evidence that CTX is engaged in the unauthorized practice of law. Contrary to the majority's reading of their argument, the Perkinses and Amicus Washington State Bar Association (WSBA) do not concede that CTX's lay employees could properly fill in legal forms as long as no fee is charged. Rather, the class action argues that CTX is engaged in the unauthorized practice of law, and that, even if CTX were to assert a potential pro se defense under Washington State Bar Ass'n, it is barred from charging such a fee. WSBA further clarifies the issue objecting to the document preparation fee on grounds that the charge makes CTX's conduct even more egregious.[10] Granted, the majority correctly explains, at length, the condition of a fee for what appears to be legal services is not dispositive. Compensation for such services, however, is conclusive evidence that the recipient is acting on behalf of another. See Washington State Bar Ass'n, 91 Wash.2d at 57, 586 P.2d 870. Here, there is no question but that CTX is acting on behalf of its customers to secure real estate loans.[11] The Perkinses and WSBA object to CTX's practice of law because they contend that it is unauthorized and that the fee further demonstrates how the public interest is harmed. Thus, that CTX charged $250.00 for its document preparation services[12] does not determine *106 whether the nature of the service was unauthorized, but rather the fee underscores the egregious nature of CTX's unauthorized practice of law.
Given the well-established case law strictly prohibiting lay persons from preparing legal documents, and that bifurcation of the real estate loan transaction both circumvents our rules of legal practice and harms the public interest, this court should conclude that CTX engaged in the unauthorized practice of law and that the trial court improperly dismissed the Perkinses' class action suit against CTX.
NOTES
[1] Decl. of Larry J. Smith Re Exs. in Supp. of Def's Summ. J. Mot. at Ex. A-19 (this declaration is designated part of the Clerk's Papers, but was transmitted as an original without Clerk's Papers indexing numbers).
[2] CTX prepared the following documents: (1) Uniform Residential Loan Application; (2) Truth in Lending Disclosure Statement; (3) Adjustable Rate Mortgage Truth in Lending Disclosure; (4) Authorizations to Verify Employment, Income, Asset Balances and Credit History; (5) Good Faith Estimate of Charges; (6) Request for Verification of Deposit; (7) Request for Verification of Employment; (8) Request for Verification of Rent or Mortgage Account; (9) Appraisal Order Form; (10); Request for Verification of Deposit; (11) Tax Information Sheet; (12) Interoffice Communication; (13) Underwriting Action; (14) Assignment of Lien to Texas Commerce Bank; (15) Assignment of Lien to Fleet Real Estate Funding Corp.; (16) Assignment of Lien (Fleet Real Estate to the Federal National Mortgage Association (FNMA)); (17) Mortgage Loan Closing Instructions; (18) Adjustable Rate Note; (19) Adjustable Rate Rider; (20) Deed of Trust; (21) Property Appraisal Disclaimer; (22) Borrower's Affidavit and Agreement; (23) Borrower's Agreement to Correct Errors and Omissions; (24) Signature Certifications; (25) Identity Certificates; (26) Seller's and/or Purchaser's Statement; (27) Truth in Lending Disclosure Statement; (28) Calculation of Amount Financed for Truth in Lending Disclosure; (29) Request for Taxpayer Identification Number and Certification; (30) Occupancy Affidavit and Financial Status; (31) Errors and Missing Document Report; (32) Letter Regarding Physical Defects Corrected; (33) First Payment Letter; (34) Conventional Delivery Transmittal; (35) Hazard/Flood Insurance Endorsement Letter; (36) Fleet Funding Delivery Transmittal; (37) Transmittal Summary to FNMA.
[3] Br. of Appellant at 9 ("What converts the practice from authorized under the pro se exception (as CTX is a party to the loan and authorized to prepare its own documents) to the unauthorized practice of law is the charging of a fee to the plaintiffs of $250.00.") (emphasis omitted); Br. of Amicus Curiae WSBA at 18 ("CTX Could Use Non-Lawyer Employees To Complete Legal Documents Under The Pro Se Exception If CTX Did Not Charge A Fee For Legal Services.") (emphasis omitted).
[4] The dissent argues that Cultum v. Heritage House Realtors, Inc., 103 Wash.2d 623, 694 P.2d 630 (1985) demonstrates that the entry of customer information into standardized legal forms requires the exercise of legal discretion. Dissent at 5. Yet, in Cultum, a real estate agent did not merely enter customer information into a standardized earnest money agreement. Rather, the agent inserted an inspection contingency clause, which purported to establish the legal basis upon which the purchaser could rescind the agreement.
[5] Washington State Bar Ass'n v. Washington Ass'n of Realtors, 41 Wash.2d 697, 702, 251 P.2d 619 (1952) (Donworth, J., concurring).
[6] Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n, 91 Wash.2d 48, 60, 586 P.2d 870 (1978) (Great Western). Despite the Perkinses' suggestion that Great Western rejected the "scrivener defense," Br. of Appellants at 14, the court expressly declined to address this amicus argument because "[t]he unchallenged findings of fact demonstrate that Great Western did in fact select the deed form and thus did not act merely as a `scrivener.'" Great Western, 91 Wash.2d at 60, 586 P.2d 870.
[7] See Cultum, 103 Wash.2d at 626, 694 P.2d 630 (buyer's earnest money refund delayed because real estate agent prepared ambiguous contingency clause); Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 591-92, 675 P.2d 193 (1983) (seller unable to execute against property upon buyer default because escrow agent prepared unsecured promissory note); Hogan v. Monroe, 38 Wash.App. 60, 62, 684 P.2d 757 (1984) (lessors' repossession rights inadequately protected by lease-option agreement drafted by real estate agent); Hecomovich v. Nielsen, 10 Wash.App. 563, 518 P.2d 1081, review denied 83 Wash.2d 1012 (1974) (seller unable to recover personalty upon buyer default because real estate agent failed to provide for personalty in real estate sales contract).
[1] See, e.g., Hagan & Van Camp, P.S. v. Kassler Escrow, Inc., 96 Wash.2d 443, 446, 635 P.2d 730 (1981) ("The `practice of law' does not lend itself easily to precise definition. However, it is generally acknowledged to include not only the doing or performing of services in the courts of justice, throughout the various stages thereof, but in a larger sense includes the legal advice and counsel... by which legal rights and obligations are established.").
[2] Washington's Admission to Practice Rules provide that certain persons may select, prepare and complete legal documents incident to the closing of real estate and personal property transactions upon certification and approval by the Limited Practice Board. Certification requires that such person be at least 18 years of age; be of good moral character; satisfy the examination requirements established by the Board; and undergo continuing education to retain his or her certified status. Upon certification such person is deemed a "closing officer" and is authorized to select, prepare and complete documents for use in a loan, extension of credit, sale or other transfer of real or personal property. Such documents shall be limited to deeds, promissory notes, guaranties, deeds of trust, reconveyances, mortgages, satisfactions, security agreements, releases, Uniform Commercial Code documents, assignments, contracts, real estate excise tax affidavits, and bills of sale. A certified closing officer may render those services provided that, prior to the performance of the services, all parties to the transaction agree in writing to the basic terms and conditions of the transaction; and that the closing officer advise the parties of the limitations of the services rendered in addition to advising the customer in writing that the closing officer is not acting as an advocate of either party; the documents to be prepared affect the legal rights of the parties; the parties' interests may differ; the parties have a right to be represented by an lawyer; and the closing officer cannot give legal advice as to how the documents affect the legal rights of the parties. Washington COURT RULES, ADMISSION TO PRACTICE RULE, Rule 12(a),(c),(d),(e),(f) (1998).
[3] RCW 18.85.090 provides the licensing requirements for real estate brokers and RCW 18.85.095 provides similar licensing requirements for real estate salespersons.
[4] See Hogan v. Monroe, 38 Wash.App. 60, 62, 684 P.2d 757 (1984) (lessors' repossession rights inadequately protected by lease-option agreement drafted by real estate agent); Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 591-92, 675 P.2d 193 (1983) (seller unable to execute against property upon buyer default because escrow agent prepared unsecured promissory note); Hagen & Van Camp, 96 Wash.2d 443, 635 P.2d 730 (escrow agents' and officers' preparation of documents in connection with real estate transactions constitutes unauthorized practice of law, and Legislature's enactment of statute authorizing escrow agents and officers involved with real estate transactions to select, prepare, and complete legal documents violated the Supreme Court's exclusive power to regulate the practice of law); Hecomovich v. Nielsen, 10 Wash.App. 563, 518 P.2d 1081 (1974) (escrow company and its manager engaged in unauthorized practice of law when they determined which forms to prepare to effectuate earnest money receipt and completion of preprinted legal forms). But cf. Cultum, 103 Wash.2d at 626, 694 P.2d 630 (permission given licensed real estate brokers or licensed salespersons to complete standard earnest money agreements provided they comply with the standard of care of a practicing lawyer).
[5] See Hagen & Van Camp, 96 Wash.2d at 446, 635 P.2d 730 (the practice of law "`is generally acknowledged to include not only the doing or performing of services in the courts of justice, throughout the various stages thereof, but in a larger sense includes the legal advice and counsel... by which legal rights and obligations are established.'").
[6] The court was thereby compelled to create a specific exception for licensed real estate brokers and salespersons.
[7] Cultum, 103 Wash.2d at 631, 694 P.2d 630 (real estate brokers and salespersons authorized to complete form legal documents but must comply with the standard of care of a practicing attorney in addition to real estate licensing requirements).
[8] This decision may have implications for the practice of law that reach far beyond the real estate industry.
[9] See footnote 5, supra..
[10] See Br. of Amicus Washington State Bar Ass'n. In Cultum, the Washington State Bar Association (WSBA) took the position that the public interest was best served by allowing licensed real estate agents to complete standard form earnest money agreements, whether or not such activities technically constitute "the practice of law." Br. of Amicus Washington State Bar Ass'n at 15.
[11] As amicus WSBA points out, many of the documents at issue significantly affect the legal rights of CTX's customers: assignment of lien from CTX to Texas Commerce Bank, mortgage loan closing instructions, deed of trust, borrower's affidavit, etc.
[12] CTX claims that its document preparation fee is not based directly upon the creation of any particular document, that CTX does not charge the $250.00 fee for legal services, and that the fee is charged to recoup some of CTX's overhead costs associated with the paperwork necessary for mortgage loans. Br. of Resp't at 7. However, the U.S. Department of Housing and Urban Development clearly defines the document preparation fee as a separate fee some lenders or title companies charge to cover their costs of preparation of final legal papers, such as a mortgage, deed of trust, note or deed. U.S. Dept. of Housing and Urban Development, Buying Your Home: Settlement Costs and Helpful Information (June 1997).