FILED
COURT OF APPEALS
DIVISION II

2013 JUL 30 AM 10: 29

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN J. HADALLER, an individual, | No. 42524-6-II |
| Appellant, | |
| v. | |
| DAVID and SHERRY L. LOWE, individually and the marital community thereof; and RANDY FUCHS, an individual, | UNPUBLISHED OPINION |
| Respondents. | |

PENOYAR, J. — John Hadaller bought two lots in 2002 and asserts a right of first refusal on a third lot despite no corroborating written agreement. Randy Fuchs attempted to buy the third lot in 2006 but was dissuaded when Hadaller filed a lis pendens against the property. In 2008, Hadaller assented to David and Sherry Lowe buying the lot because Hadaller believed he had an agreement with the Lowes entitling him to some ownership interests in the lot once the Lowes made the purchase. Having bought the lot, the Lowes declined Hadaller's "firm offer" detailing their respective interests, and Hadaller informed them on May 9, 2008, that he intended to begin legal proceedings against them as the lot's owners.

On May 13, 2011, amid related litigation, Hadaller filed this lawsuit against the Lowes and Fuchs for, among other things, tortious interference with contractual relations. The trial court granted the Lowes' and Fuchs's motions for summary judgment. Hadaller appeals, arguing that the trial court erred by (1) denying his motion for Judge Lawler's recusal; (2) ruling that the statute of limitations bars his claims; (3) ruling that he failed to make a prima facie case for his tortious inference claim; and (4) awarding attorney fees and costs under CR 11 and RCW 4.84.185.

Because Hadaller fails to show that Judge Lawler was prejudiced or biased, the trial court's denial of Hadaller's motion for recusal was proper. And because, viewing the facts in a light most favorable to Hadaller, he knew by May 9, 2008, that the Lowes had purchased the lot in question, his action filed May 13, 2011, was untimely and further review of the claim's merits is unwarranted. Because Hadaller fails to present any argument against the award of attorney fees under RCW 4.84.185, we do not consider whether the award was proper. We affirm.

FACTS

I.     FACTUAL BACKGROUND

In 2002, Hadaller bought lot 1 and lot 3 on Mayfield Lake's shoreline from the Fortman Trust (Fortman). Hadaller alleges that, as part of that purchase, Fortman gave him a right of first refusal on lot 2. Hadaller admits, however, that this right of first refusal was not included in the written purchase and sale agreement. Still, Hadaller claims he relied on this right in making improvements to lots 1 and 3 and to lot 2, which he expected to buy in the future. To this end, Hadaller claims to have made unsuccessful offers to Fortman in 2004 and 2005 to buy lot 2.

In August 2006, Fuchs made Fortman an offer for lot 2. Fortman informed Hadaller of the offer, and Hadaller submitted his own offer. In September 2006, Hadaller filed a lis pendens against the property. Because of this action and because Fortman believed that Hadaller had ruined the sale of lot 2 to Fuchs, Fortman vowed to never sell lot 2 to Hadaller.

In 2007, the Lowes bought three smaller lots that Hadaller had recently developed within lot 3. Around late April or early May 2008, when the Lowes expressed interest in buying lot 2, Hadaller claims he came to an agreement with them about apportioning property interests in lot 2 between him and the Lowes if the Lowes were able to purchase lot 2 from Fortman. When the Lowes asked Hadaller if he thought Fortman would sell them the property, "Hadaller suggested

2

Lowe make an offer and see what happened." Appellant's Br. at 21. The Lowes made that offer, signing a purchase and sale agreement with Fortman for lot 2 on May 6-7, 2008.

On May 6, Hadaller hand wrote the alleged agreement he had with the Lowes regarding lot 2, and then scanned it and attached it to an e-mail to the Lowes dated May 7, stating that this was his "firm offer." Clerk's Papers (CP) at 498. Later that day, the Lowes e-mailed Hadaller, informing him that they had closed the deal with Fortman for lot 2. In the e-mail, the Lowes also declined Hadaller's offer, explaining that they "do not want to rush into anything at this point." CP at 499.

In Hadaller's e-mail to the Lowes on May 8, he acknowledged the Lowes' purchase of lot 2 and forecasted the ensuing tide of litigation: "Attached is a copy of the Lis pendance [sic] that is filed against the property you are apparently buying as is. My action against the property needs to be reserved. The problems I have with that property and it's [sic] owner goes with the property and any succeeding owner." CP at 501. Later that day, the Lowes e-mailed Hadaller, confirming that their purchase and sale agreement for lot 2 was "fully executed and finalized" and recommending that the lis pendens be postponed or dismissed without prejudice, at least until they had "a chance to talk about things and attempt to come to an agreement." CP at 505.

On May 9, Hadaller e-mailed the Lowes, explaining that to protect the property rights he perceived he had in lot 2, he intended to start legal proceedings against them as the lot 2 owners.

II. PROCEDURAL BACKGROUND

In the midst of related litigation, Hadaller filed suit against the Lowes and Fuchs on May 13, 2011, alleging, among other things, tortious interference with contractual relations. Later that month, Hadaller moved for Judge Lawler's recusal. On July 1, the court denied Hadaller's motion. That same day, the Lowes moved for summary judgment, arguing, among other things,

that the three-year statute of limitations barred Hadaller's claims and that the trial court should award attorney fees and costs under CR 11 and RCW 4.84.185. After a hearing later that month, the court granted the motion, concluding that the statute of limitations had started running on May 9, 2008, and awarding attorney fees and costs under both CR 11 and RCW 4.84.185. Hadaller appeals.[1]

## ANALYSIS

### I.    MOTION TO RECUSE

Hadaller argues that Judge Lawler should have recused himself from the case because his former law firm has been representing Fortman in related litigation and because he has had negative interactions with Hadaller in the past.[2] Because Hadaller fails to show that Judge

---

[1] In November 2011, Fuchs moved for summary judgment. The next month, the court granted Fuchs's motion. In an amended notice of appeal, Hadaller seeks review of the trial court's order granting summary judgment to Fuchs. Consistent with RAP 10.3(a)(4) & (6), however, the respondents correctly point out that

> Hadaller does not assign error to the trial court's summary judgment in favor of Fuchs on all claims, namely, Hadaller's claims for misrepresentation, tortious interference, disparagement, slander of title and injurious falsehood and emotional distress. Indeed, Hadaller's brief is devoid of substantive assertions as to claims against Fuchs. As a result, the trial court's decision on these claims is unchallenged and thus should be affirmed. Moreover, because the trial court's decision on these claims, including finding them frivolous, is unchallenged, Hadaller does not challenge the underlying justification for the award of attorney's fees under both CR 11 and RCW 4.84.185 based on these claims.

Resp'ts' Br. at 1-2. Accordingly, we affirm the trial court's order granting summary judgment to Fuchs. The issues Hadaller presents on appeal thus pertain only to his claims against the Lowes.

[2] Lewis County has three superior court judges: Judges Hunt, Brosey, and Lawler. Judge Hunt recused himself because he had represented Hadaller in a dispute over obtaining rights to use the shoreline next to the properties concerned here. As a matter of right, Hadaller requested that Judge Brosey recuse himself. Requesting that Judge Lawler also recuse himself, Hadaller argues that a judge from a neighboring county be brought in or that the case be heard in Thurston or Cowlitz County.

4

Lawler is prejudiced or biased against him, and because Judge Lawler's decision not to recuse was reasonable, the trial court properly denied Hadaller's motion to recuse.

Whether to recuse is within the trial judge's sound discretion, and we will not alter that decision absent a clear showing that it is manifestly unreasonable or that the judge exercised discretion on untenable grounds or for untenable reasons. *Wolfkill Feed & Fertilizer Corp. v. Martin*, 103 Wn. App. 836, 840, 14 P.3d 877 (2000). "Due process, the appearance of fairness, and Canon 3(D)(1) of the Code of Judicial Conduct require disqualification of a judge who is biased against a party or whose impartiality may be reasonably questioned." *Wolfkill*, 103 Wn. App. at 841. The trial court, however, is presumed to perform its functions regularly and properly without prejudice or bias. *Kay Corp. v. Anderson*, 72 Wn.2d 879, 885, 436 P.2d 459 (1967); *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 127, 847 P.2d 945 (1993). Although under RCW 4.12.050 a party may change judges once as a matter of right without substantiating the claim of prejudice, the party must support its claim that a subsequent judge is prejudiced or biased. *State v. Dominguez*, 81 Wn. App. 325, 328-29, 914 P.2d 141 (1996). "Evidence of a judge's actual or potential bias is required before the appearance of fairness doctrine will be applied." *Dominguez*, 81 Wn. App. at 329.

Hadaller argues that Judge Lawler should have recused himself for two reasons. First, Judge Lawler's former law firm has been representing Fortman in related litigation. Hadaller argues that this representation violates the appearance of fairness and requires recusal because Fortman "must be joined to obtain complete relief." Appellant's Br. at 9. Second, Hadaller had a disagreement years ago with Judge Lawler when Hadaller consulted with then-attorney Lawler about representing him in his divorce: "Attorney Lawler made opinions Hadaller did not agree

with and flatly told him so and walked from his office and hired a competing attorney." Appellant's Br. at 9.

Hadaller's arguments fail to support his claim of Judge Lawler's prejudice or bias, and Judge Lawler's decision not to recuse was based on reasonable grounds. Fortman is not a party to this case, despite Hadaller's allegations that it should be. And, as the respondents point out, none of the parties in this case has been represented by anyone from Judge Lawler's former firm. Furthermore, Hadaller's consultation about his divorce case with then-attorney Lawler has nothing to do with this case and occurred over a decade ago; indeed, Judge Lawler remarked at the hearing on the motion for recusal that "I have no recollection of discussing any of those issues with you regarding your divorce. In my . . . 24 years in private practice, I represented thousands of people in dissolution proceedings. And I'm sorry to say that the short conversation that I had with you does not stand out among them." Report of Proceedings (July 1, 2011) at 13. Finally, Judge Lawler noted that he was not going to effectively eliminate the Lewis County bench for this case by recusing. For these reasons, we affirm the trial court's denial of Hadaller's motion to recuse Judge Lawler.

II.    STATUTE OF LIMITATIONS

Hadaller argues that the statute of limitations does not bar his claim against the Lowes for tortious interference with contractual relations because he was not fully aware of the Lowes' alleged misrepresentation until more than six months after the Lowes purchased lot 2. The Lowes argue that Hadaller wrongly conflates his tortious interference claim with his untimely claims of misrepresentation and fraud, and that Hadaller was well aware of his tortious interference claim by May 9, 2008. Because a series of e-mails between Hadaller and the Lowes

clearly demonstrates that Hadaller knew about the alleged interference—the Lowes' purchase of lot 2—by that date, Hadaller filed the lawsuit four days too late on May 13, 2011.

We review summary judgments de novo. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The trial court properly grants a party's motion for summary judgment where—viewing facts in a light favorable to the non-moving party—there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. CR 56(c); *Ranger Ins.*, 164 Wn.2d at 552. "Questions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008). Generally, a cause of action accrues and the corresponding limitations period begins to run when a party has the right to seek relief in the courts. *First Maryland Leasecorp v. Rothstein*, 72 Wn. App. 278, 282, 864 P.2d 17 (1993). The statute of limitations for tortious interference with contractual relations is three years. RCW 4.16.080(2); *City of Seattle v. Blume*, 134 Wn.2d 243, 251, 947 P.2d 223 (1997).

We must first clarify which of Hadaller's claims were properly before the trial court when it considered the Lowes' motion for summary judgment. Hadaller argues tortious interference with contractual relations, and vaguely attempts to infuse this claim with claims of misrepresentation and fraud. Under this unusual hybrid claim, Hadaller argues that his cause of action against the Lowes did not accrue when the Lowes bought lot 2 in May 2008. He claims the action accrued in December 2008 when the Lowes, by informing Hadaller that they had formed a new homeowners' association, confirmed Hadaller's suspicions that they had misrepresented their intentions in purchasing lot 2. Pointing out that the trial court did not consider any claims of misrepresentation or fraud, the Lowes argue persuasively that Hadaller's

claim against them is properly framed for this court simply as one of tortious interference with contractual relations.[3]

We agree with the Lowes. Extracting these defective misrepresentation and fraud claims from the surviving tortious interference claim, we note that this claim matures no later than when Hadaller became aware that the Lowes purchased the lot Hadaller claims was promised to him. The Lowes present a string of e-mails between them and Hadaller in early May 2008 showing that Hadaller was aware by May 9 at the latest of the Lowes' purchase of lot 2. As of May 9, then, Hadaller knew that his purported right to purchase lot 2 had not been honored by Fortman. Because Hadaller waited to file the complaint until May 13, 2011, more than three years since his cause of action had accrued, the statute of limitations bars this lawsuit.[4]

III.   TRIAL COURT'S AWARD OF ATTORNEY FEES AND COSTS

Hadaller argues that he should not have been subject to attorney fees and costs for a frivolous action, but he addresses why this is so only with respect to CR 11. Because he provides no argument why the award of attorney fees to the respondents was improper under RCW 4.84.185, Hadaller effectively abandons any argument as to RCW 4.84.185 and concedes

---

[3] If some claim of misrepresentation had been pleaded, the statute of limitations for it ran before Hadaller's filing. Hadaller informed the Lowes in an e-mail dated May 9, 2008, of his intention to begin legal proceedings against them with respect to the property. Thus the three-year statute of limitations ran no later than May 9, 2011, four days before Hadaller filed his complaint. We affirm the trial court's grant of the Lowes' motion for summary judgment.

[4] Hadaller alternatively claims that May 14, 2008—the recording date for Fortman's sale of lot 2 to the Lowes—should be the day the three-year statute of limitations began running. Hadaller cites *First Maryland Leasecorp*, 72 Wn. App. at 282, and an unpublished case, *Greene v. Brown*, noted at 123 Wn. App. 1061 (2004), for the rule that the statute of limitations begins to run in a dispute on real property the date the sale is recorded in the auditor's files. Setting aside Hadaller's improper reliance on an unpublished opinion, Hadaller misreads these cases, which address when a statute of limitations begins running in cases of fraud—a party, for example, may have constructive notice of the fraud when such a sale is recorded. But, despite Hadaller's protestations otherwise, he has not pleaded a fraud case.

8

that under this statute the award of attorney fees was proper. *See* RAP 10.3(a)(6); *Tegman v. Accident & Med. Investigations, Inc.*, 107 Wn. App. 868, 874, 30 P.3d 8 (2001) ("Assignments of error not argued in a brief are deemed abandoned."). Because the trial court's award of attorney fees was proper under RCW 4.84.185, we do not need to address whether the trial court properly imposed them under CR 11.

IV.   ATTORNEY FEES AND COSTS ON APPEAL

As provided by RAP 18.1, the respondents request attorney fees and costs on appeal for the same reasons they were entitled to them at the trial court—that is, under RCW 4.84.185. Because the award of attorney fees below was proper under RCW 4.84.185, we likewise award these fees and costs on appeal.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Penoyar, J.

We concur:

_____
Worswick, C.J.

_____
Bjorgen, J.

9